[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 455 
Doyle Lee Hamm appeals from his conviction of the capital offense of murder during a robbery in the first degree or an attempt thereof, § 13A-5-40(a)(2), Code of Alabama 1975. Appellant was found guilty by a Cullman County jury of intentionally causing the death of Patrick Cunningham during the commission of a robbery in the first degree. A sentence hearing was held, pursuant to §§ 13A-5-45 and 13A-5-46, and the jury recommended that appellant receive the death penalty. Thereafter, the trial court, in compliance with § 13A-5-47, conducted a sentencing hearing and subsequently adopted the jury's advisory verdict, sentencing appellant to die by electrocution.[1] Appellant raises three issues on appeal; however, he does not question the sufficiency of the evidence to support his conviction or sentence. We find that the evidence supported, beyond a reasonable doubt, the verdict of guilt and the sentence of death.
The prosecution's evidence established that, on January 24, 1987, a Saturday, Patrick Cunningham was working the 3:00 p.m. to 7:00 a.m. shift as the desk clerk of Anderson's Motel in Cullman, Alabama. At approximately 10:30 p.m., Kathy Flannagan, who was en route from Florida to Missouri, stopped at the motel to rent a room for the night. While registering, Flannagan observed a small-frame white male, who was wearing a blue v-neck sweater and a windbreaker (hereinafter "Subject One"), enter the motel lobby and ask Cunningham about a room for three. Cunningham informed Subject One that he had to have a reservation, and that subject left. Moments later, as Flannagan was about to leave the lobby, Subject One re-entered, accompanied by another white male, who was dressed in blue jeans and a faded green army fatigue jacket (hereinafter "Subject Two"). Cunningham told Flannagan that it "looks like there is going to be trouble," and he hurriedly pointed her toward her room. When Flannagan got into her car, she looked back inside the lobby and observed Subject Two pointing a shiny-looking revolver in the direction of the reception desk where Cunningham had been standing when she left. Flannagan was unable to actually see behind the desk because that portion of her view was obstructed. However, she observed Subject One standing near the door that the two men had entered, and she also saw a "banged up" early 1970's model car parked, with its engine running, just outside the motel door. The car sounded as if it did not have a muffler. There was possibly a third person inside the car. Flannagan acted as though she saw nothing, drove to a nearby telephone, and called the police. She reported to the dispatcher that the motel was being robbed, and she was instructed to return there to meet the police, which she did, whereupon she gave them a description of the men and of the car she had seen.
Cunningham's body was subsequently discovered on the floor behind the reception desk. He had been killed by a single shot to the head from a .38 caliber pistol. The evidence revealed that Cunningham was lying on the floor when he was shot in the temple area from a distance of approximately 18 inches. Investigation at the scene revealed that Cunningham's wallet, which his wife later estimated had contained approximately $60, was missing. The motel cash drawer, which should have contained in excess of $350 in cash was empty except for some coins.
Officer Lynn Wood of the Cullman police Department, who headed the investigation, learned from a teletype received by the Cullman Police and from a telephone conversation with the Sheriff of Tishomingo County, Mississippi, that two men matching *Page 456 
the descriptions given by Flannagan were wanted in Mississippi in connection with a robbery-murder which had occurred there earlier that same day. Officer Wood also learned that a .38 caliber, nickel-plated revolver had been taken in that Mississippi robbery.
The following day, Sunday, January 25, Officer Wood talked with Douglas Roden, who had been stopped by authorities in Decatur, driving a car that matched the description of, and that was later positively identified by Flannagan as, the car she had seen at the motel. Roden told Officer Wood that he and Regina Roden, his sister-in-law, had been kidnapped by appellant, Jimmy Wardlow, and Paula Cook. He said that they had been held in a trailer at a trailer park in Cullman and that appellant and Wardlow had left the trailer for about two hours on the night of the motel robbery, driving that same car. Roden said that he had seen a nickel-plated pistol at the trailer and one or two knives. He informed Officer Wood that he and Regina had escaped from the trailer that morning, Sunday, January 25, in the car and had driven to Decatur, where they were stopped by the police. The Rodens took Officer Wood to Lake's Trailer Park and pointed out trailer # 10, which was later determined to be the residence of appellant's nephew, Alfred Uselton, as the place where they had been held and where they had last seen appellant.
Later that same day, a search warrant for the # 10 trailer and two fugitive from justice warrants for a robbery in Lee County, Mississippi (one for appellant and one for Wardlow) were issued upon an affidavit prepared by Officer Wood, the district attorney, and Sheriff Payne of Tishomingo County, Mississippi. After the warrants were signed, Officer Wood proceeded to Lake's Trailer Park where other officers already had the # 10 trailer under surveillance. Officer Wood radioed that the paperwork was complete, and the officers on the scene ordered appellant, Jimmy Wardlow, and Paula Cook out of the trailer and took them into custody. Officer Wood arrived on the scene with the warrants, and the trailer was searched. Inside the trailer, the officers found and seized a nickel-plated .38 caliber pistol, numerous rounds of .38 caliber ammunition, a faded green army fatigue jacket with several .38 caliber bullets in the pocket, some knives, and some clothing.
Appellant was transported to jail and booked as a fugitive from justice. At the sheriff's office, appellant gave a statement, in which he apparently denied any involvement in the Anderson Motel incident, and he participated in a lineup at which Flannagan failed to identify him as one of the men she had seen at the motel. Thereafter, appellant was placed under arrest for the Anderson Motel robbery. The following day, appellant gave a second statement, which was taped and later played for the jury, wherein he admitted that his initial statement was false and wherein he confessed to the robbery and murder of Patrick Cunningham. Subsequently, appellant was charged with the capital offense of robbery-murder.
It was later determined and ultimately testified to at trial by the Rodens that their original statements, leading up to appellant's arrest, were partly false. They had not been kidnapped by appellant and Wardlow, but had gone of their own accord to Lake's Trailer Park with them and Paula Cook. It was further discovered that the Rodens had, in fact, been the two individuals with appellant at Anderson's Motel on the night of the robbery-murder. Douglas Roden was the first man seen by Flannagan, Subject One, and Regina Roden had remained outside in the car. The record indicates that both of the Rodens entered into an agreement with the state whereby they would testify against appellant at trial, which they did, in exchange for being allowed to plead guilty to lesser offenses. The record indicates that Douglas Roden, who was charged with capital murder, agreed to plead guilty to the lesser offense of murder, for which he would receive a life sentence. The record also reveals that Regina Roden agreed that, in exchange for her testimony, she would plead guilty to robbery, for which she would be sentenced to seven years, and to hindering prosecution, *Page 457 
for which she would receive a concurrent sentence of three years' imprisonment.
Appellant did not testify during the guilt phase of the trial, nor did he offer any evidence in his defense.
 I.
Appellant contends that the indictment, upon which he was prosecuted, failed to aver sufficient elements of the aggravation to support his conviction of a capital offense. He argues that, in order to properly charge the aggravation of robbery, as part of a capital offense, the indictment must aver that the victim of the force or attempted force was also the victim of the theft or attempted theft. He contends that the instant indictment charges only that Anderson Motel, Bill Anderson, or Francis Anderson was the victim of a theft and that Patrick Cunningham was the victim of an intentional murder and of an assault with a deadly weapon. For this reason, appellant contends that his conviction should be reversed. We disagree.
The instant indictment, in pertinent part, states the following:
 "Doyle Lee Hamm . . . did intentionally cause the death of Patrick Joseph Cunningham, by shooting him with a pistol; and Doyle Lee Hamm caused said death during the time that Doyle Lee Hamm was in the course of committing a theft of $350.00 in lawful greenback currency or coins, of the United States of America, including pennies, a better description of which is otherwise unknown to the Grand Jury than as stated, the property of Anderson Motel or the property of Bill Anderson, or the property of Francis Anderson, the ownership which is further unknown than stated, by the use of force against the person of Patrick Joseph Cunningham, with intent to overcome his physical resistance or physical power of resistance, while the said Doyle Lee Hamm was armed with a deadly weapon, to-wit: a pistol, in violation of the Code of Alabama, 1975, Section 13A-5-40(a)(2). . . ."
First degree robbery is defined by § 13A-8-41(a), which, in pertinent part, reads as follows:
 "A person commits the crime of robbery in the first degree if he violates section 13A-8-43 and he:
 "(1) Is armed with a deadly weapon or dangerous instrument. . . ."
Section 13A-8-43(a), in pertinent part, provides the following:
 "A person commits the crime of robbery in the third degree if in the course of committing a theft he:
 "(1) Uses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance. . . ."
Clearly, robbery is committed when force is used against another person in furtherance of a theft, and the ownership of the property taken is of no consequence. "There is no requirement in establishing a prima facie case of robbery that the property stolen belong to the robbery victim." Raines v.State, 429 So.2d 1104, 1106 (Ala.Cr.App.), aff'd,429 So.2d 1111 (Ala. 1982), cert. denied, 460 U.S. 1103, 103 S.Ct. 1804,76 L.Ed.2d 368 (1983) (as quoted in McKeithen v. State,480 So.2d 36, 38 (Ala.Cr.App. 1985)).
The instant indictment plainly charged appellant with the use of deadly force against Patrick Cunningham "with intent to overcome his physical resistance or physical power of resistence" while in the course of committing a theft. For an indictment to be valid, it "must clearly inform the accused of the offense with which he is being charged and must do so in language that is readily understood by the ordinary person."Thatch v. State, 432 So.2d 8, 10 (Ala.Cr.App. 1983). There can be no doubt that the instant indictment charged the capital offense of robbery-murder and that such charge was conveyed in language that an ordinary person, including appellant, could understand. The indictment sufficiently apprised appellant of the charge against him and, therefore, we reject his argument.
We further note that, although the record reflects argument by appellant on *Page 458 
this specific point at the close of the state's evidence, it was not specifically brought to the trial court's attention before trial. This seems to indicate that there was, in fact, no uncertainty on behalf of appellant as to the charge he faced. Appellant's only pretrial attack on the indictment came in the form of a standard form-book plea to the insufficiency of the indictment and, while this would arguably have been sufficient to preserve any actual errors in the indictment, its generalized wording strengthens our belief that the alleged defect now asserted by appellant did not leave him in doubt about the charge he would be called upon to defend.
 II.
Appellant also contends that the trial court erred in admitting his taped confession into evidence. He argues that his initial arrest, as a fugitive from justice, was illegal because the fugitive warrant was issued without probable cause; that it was facially invalid for failure to comply with certain requirements of § 15-9-40; and that its execution was in violation of § 15-9-42. He argues, therefore, that the alleged illegal arrest tainted his subsequent confession and should have resulted in the confession's exclusion as "fruit of the poisonous tree."
We find it unnecessary to reach the merits of appellant's claim regarding the defects in the arrest warrant and its execution, because we find that appellant lacked the necessary standing to challenge the validity of the warrant.
In Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371,63 L.Ed.2d 639 (1980), the Supreme Court held that the Fourth Amendment prohibits the police from making a warrantless and nonconsensual entry into the suspect's home in order to make a routine felony arrest. If from the evidence, Uselton's trailer could be characterized as appellant's residence,[2] then certainlyPayton would have applied, and, under normal circumstances, the police would have needed a valid arrest warrant before appellant could have been summoned from within and taken into custody. See United States v. Al-Azzawy, 784 F.2d 890 (9th Cir. 1985), cert. denied, 476 U.S. 1144, 106 S.Ct. 2255,90 L.Ed.2d 700 (1986) (wherein the court determined that Payton applied where police officers, with their guns drawn, surrounded the arrestee's trailer and ordered the arrestee, through a bullhorn, to come outside). However, such is not the case here, for the trailer was clearly not appellant's residence.
The requirements for police entry into premises of a person other than the individual to be arrested are set forth inSteagald v. United States, 451 U.S. 204, 101 S.Ct. 1642,68 L.Ed.2d 38 (1981). In such a situation, it matters not that the warrant happened to be labelled an arrest warrant or a search warrant, provided that whatever procedure was utilized required the magistrate to pass on both the probable cause to arrest the suspect and the probable cause to search the other person's premises (the probable cause to believe that the suspect is located on those premises). 2 W. LaFave, Search and Seizure § 6.1(b), p. 576 (2d ed. 1987).
While there is some conflict in the analysis of standing for an arrestee rightfully on the premises of another, 4 W. LaFave, supra, at § 11.3(b), pp. 296-98, there appears to be no question surrounding the determination of standing for an arrestee wrongfully on the premises of another.
 "[I]t must be emphasized again that standing . . . is not available to those whose presence is 'wrongful.' Thus, a trespasser cannot claim standing by virtue *Page 459 
of his presence at the time and place where the alleged Fourth Amendment violation has occurred. The burden is on the defendant to establish that his presence was not wrongful, and this burden is not met by merely establishing that the premises are not occupied by anyone else or that the premises belong to a friend. Usually, what is required is a showing that a person authorized to do so gave permission for the defendant to be present on that particular occasion, although such a particularized consent need not be shown if by custom the defendant was allowed to come on the premises whenever he chose to do so."
Id. at pp. 298-99 (footnotes omitted). The arrestee may have a subjective expectation of privacy; however, it may not be one that the law recognizes as legitimate, "one that society is prepared to recognize as 'reasonable.' " Rakas v. Illinois,439 U.S. 128, 151, 99 S.Ct. 421, 434, 58 L.Ed.2d 387 (1978) (Powell, J., concurring) (quoting Katz v. United States,389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring)).
In the present case, the evidence revealed that the # 10 trailer was leased by appellant's nephew, Alfred Uselton; however, Uselton was not there when appellant arrived and he had not given appellant permission to be in the trailer, on that particular occasion, nor did he even know, prior to the arrest and search, that appellant was there. In fact, the record indicates that Uselton had not communicated with appellant for over three years and that Uselton had resided in the trailer for only two years. There was no evidence that appellant customarily visited the trailer or that he had ever been there before. Further, appellant presented absolutely no testimony to the effect that he had legally entered the premises. Instead, the evidence supports the inference that he illegally entered the trailer, for his nephew stated that he would press burglary charges "if he had to." Uselton's testimony that appellant was welcome in his home falls far short of meeting appellant's burden, especially since there was no showing that this "congeniality" was conveyed to appellant by way of any invitation.
Upon this evidence, we find that appellant failed to establish that his presence at the trailer was not wrongful and, therefore, that he had a legitimate expectation of privacy in the trailer. With regard to this holding that appellant lacked standing to challenge, at all, the intrusion into Uselton's trailer, it follows that appellant lacked standing here to question the legality of the arrest warrant; rather, the sole question is whether there was probable cause to arrest him. See United States v. Buckner, 717 F.2d 297, 300-01 (6th Cir. 1983).
Whether probable cause exists to justify the issuance of a warrant is judged upon the totality-of-the-circumstances analysis reaffirmed in Illinois v. Gates, 462 U.S. 213,103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). This analysis is equally applicable in determining whether there is probable cause to make a warrantless arrest. State v. Calhoun, 502 So.2d 795
(Ala.Cr.App.), aff'd in pertinent part, rev'd in part on other grounds, 502 So.2d 808 (Ala. 1986). Probable cause for a warrantless arrest is the same as that required to justify the issuance of an arrest warrant. Id. When the question is whether there was probable cause to make an arrest, all the circumstances, including "veracity" and "basis of knowledge" of persons supplying hearsay information, must be considered in determining whether there were reasonably trustworthy facts known to the officer that would justify a prudent man in believing the accused committed the crime. See State v.Calhoun. See also Blanco v. State, 515 So.2d 115 (Ala.Cr.App. 1987). The officer's mere suspicion that the accused committed the offense is not enough. State v. Calhoun. However, the facts known to the arresting officer need not be sufficient to convict in order to justify the arrest. McCants v. State,459 So.2d 992 (Ala.Cr.App. 1984).
A sufficient number of the facts, which the officers had before them prior to their arrest of appellant, are conveniently reflected in the affidavit which was presented *Page 460 
to the judge issuing the search and arrest warrants. The affidavit contained the following information: That a robbery and murder had been committed at Anderson's Motel in Cullman at approximately 10:45 p.m. on January 24, 1987; that a witness, Kathy Flannagan, had given a description of two suspects and their car; that information had been received from authorities in Mississippi informing the Cullman authorities that Doyle Lee Hamm (appellant) and Jimmy Wardlow were wanted in Mississippi in connection with a robbery-murder which occurred there earlier on the same day as the Cullman crime; that the physical descriptions of the two suspects and vehicle involved in the Mississippi robbery-murder were identical to the physical descriptions of the subjects and vehicle seen by Flannagan at Anderson's Motel; that Cullman authorities had spoken with Sheriff Payne of Tishomingo County, Mississippi, whose description of the Mississippi robbery-murder suspects matched the description of those seen by Flannagan at Anderson's Motel; that Sheriff Payne had also informed Cullman authorities that a .38 caliber nickel-plated revolver was taken in the Mississippi robbery-murder; that Flannagan had seen one of the subjects at Anderson's Motel with a nickel-plated revolver; that Sheriff Payne also informed Cullman authorities that an individual in Mississippi had transported the two Mississippi suspects to Red Bay, Alabama; that Officer Wood had talked to Douglas Roden, who informed him that he was at the residence of his sister in Red Bay, Alabama, on January 24, 1987, and that he had left there with Doyle Hamm and Jimmy Wardlow and traveled to Cullman in a car matching the description given by Flannagan; that Roden further stated that he, Hamm and Wardlow had gone to Lake's Trailer Park, lot # 10, in Cullman and he had been threatened by Hamm and Wardlow and told he could not leave; that Roden also told Officer Wood that Hamm and Wardlow had left the trailer, in a car matching the description given by Flannagan, for about two hours after dark on January 24, 1987; that Roden had sneaked away, in the same car, from the # 10 trailer during the morning of January 25, 1987; that Hamm and Wardlow had been positively identified by law enforcement officials as the suspects in the Mississippi robbery-murder; and that fugitive warrants were in the process of being secured. In addition to the written information in the affidavit, Officer Wood testified that he verbally informed the judge that he had received a BOLO ("Be On the Lookout") teletype from Mississippi indicating that Doyle Hamm and Jimmy Wardlow were wanted for a robbery in Lee County, Mississippi, and that warrants had been issued.
We have no difficulty in finding that the information known by the Cullman authorities supplied them with ample probable cause and justified appellant's arrest. As noted above, probable cause to arrest exists when the officer has knowledge of reasonably trustworthy information which would warrant a reasonable person's belief that the defendant committed the offense. State v. Calhoun. There can be no doubt that the information the officers possessed in the instant case warranted such belief, nor can it be contested that the information was "reasonably trustworthy." Some of the information came from law enforcement officers of Mississippi who were working in conjunction with the Alabama authorities and such information has long been held to carry a presumption of reliability. See Bishop v. State, 518 So.2d 829 (Ala.Cr.App. 1987). Other parts of the information came from Kathy Flannagan who was acting as a citizen informer and, as such, she is presumed to be reliable, without the necessity of establishing her reliability to the extent required of a "police informer." See McCants v. State. See also Hadley v. State, 391 So.2d 158
(Ala.Cr.App.), cert. stricken, 391 So.2d 162 (Ala. 1980). The remainder of the information came from Douglas Roden. Although it was subsequently determined that Roden's statement was partially false, he, like Flannagan, could have, at the time he gave his information, been characterized as a "citizen informer," who was acting merely to assist the law enforcement officers. The fact that portions of his statement turned *Page 461 
out to be false does not automatically preclude the use of that information in determining whether probable cause existed. InFranks v. Delaware, 438 U.S. 154, 164-65, 98 S.Ct. 2674, 2681,57 L.Ed.2d 667 (1978), the Supreme Court stated the following:
 " '[W]hen the Fourth Amendment demands a factual showing sufficient to comprise "probable cause," the obvious assumption is that there will be a truthful showing' [emphasis in original]. This does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true."
Generally, inaccuracies in the information relied upon in determining the existence of probable cause for a warrant or otherwise will not affect the validity of that determination unless there is evidence that the false information was used with knowledge of its falsity or used with a reckless disregard for its truth. See Franks v. Delaware. See also Bradley v.State, 450 So.2d 173 (Ala.Cr.App. 1983). Although there is some indication in the instant record that Roden could have been the subject of some suspicion from the time he was first contacted by the police, Officer Wood testified that, at the time Roden gave his statement, he was not a suspect in the Anderson Motel incident and that he believed Roden's story. We find no evidence in the record to contradict Officer Wood's testimony or to indicate that any part of Roden's statement, which was subsequently discovered to be partly false, was knowingly or intentionally used or was relied upon with a reckless disregard for its truth.
Moreover, even if the officers did suspect that Roden was involved in the Anderson Motel incident and this suspicion required that they proceed as though Roden was a "police informer," the officers were nonetheless justified in relying on the information Roden gave. The totality-of-the-circumstances analysis of Illinois v. Gates is the appropriate analysis for determining whether an informant's tip supplied sufficient probable cause for an arrest. State v.Calhoun. This analysis replaced the two-pronged "veracity" and "basis of knowledge" analysis of Aguilar v. Texas,378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v.United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637
(1969); however, the factors announced in those cases are still highly relevant in the totality-of-the-circumstances approach and should be viewed as "closely intertwined issues that may usefully illuminate the commonsense, practical question" of whether probable cause exists. Illinois v. Gates,462 U.S. at 235, 103 S.Ct. at 2330. "[A] deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." Id. at 233, 103 S.Ct. at 2329.
In the present case, the evidence revealed that Officer Wood had never spoken to Roden before he gave his statement. Appellant stresses this point in support of his contention that Roden lacked sufficient reliability to warrant the officer's reliance on his statement. However, there is no requirement that one giving information to the police have a track record before he can be believed. Pugh v. State, 493 So.2d 388
(Ala.Cr.App. 1985), aff'd, 493 So.2d 393 (Ala. 1986). Where information given by an informer is corroborated by other information known by the officers, this may provide a "substantial basis for crediting" the information. Illinois v.Gates, 462 U.S. at 242, 103 S.Ct. at 2334. Roden informed Officer Wood that he had traveled to Cullman, in a particular vehicle, with appellant and Wardlow from Red Bay, Alabama. Officer Wood had information from Mississippi authorities that they had discovered through their investigation that someone had transported appellant and Wardlow to Red Bay, Alabama, and he also was aware that the vehicle described by Roden matched the vehicle described by Flannagan. Roden also told Officer Wood that he *Page 462 
had seen a nickel-plated pistol in the # 10 trailer; Flannagan had previously reported that she saw one of the subjects at Anderson's Motel with a nickel-plated revolver and the officers had information that a weapon fitting this description was stolen in the Mississippi robbery-murder. Roden further informed Officer Wood that appellant and Wardlow had left the trailer for about two hours after dark on the night of the Anderson Motel incident, driving the car he was in when located in Decatur. This coincided with Flannagan's description of the car she had seen at Anderson's Motel and coincided with the time of the Anderson Motel incident. The corroboration of these details by information received from other sources lent credibility to Roden's statement and, in our view, justified the officer's reliance on and belief in Roden's entire statement. Moreover, the clear showing of Roden's basis of knowledge more than compensates for any deficiency which may have existed in his veracity. The fact that Roden was driving the car matching the description of the one seen at Anderson's Motel, along with the fact that Roden knew Hamm (appellant) and Wardlow by name and reported having been with them while traveling to Cullman and while at Lake's Trailer Park, established that his information was obtained first-hand and further justified the officers' reliance on Roden's information.
Considering all the information available to the Cullman authorities by a totality-of-the-circumstances analysis, we are convinced that it was more than adequate to warrant a reasonable person's belief that appellant was involved in the Anderson Motel robbery-murder. Therefore, we find that there was probable cause for appellant's arrest and that his motion to suppress his subsequent confession was properly denied.
In conclusion, we note that Officer Wood's initial pronouncement that appellant was under arrest as a fugitive from justice does not affect our judgment that the arrest was lawfully based on probable cause to make the arrest for the Anderson Motel robbery-murder.
 " 'When an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest.' United States v. Saunders, 476 F.2d 5, 7 (5th Cir. 1973). See generally 2 W. LaFave, Search and Seizure § 5.1(e), at 416 n. 168 (2d ed. 1987).
 " '[T]he existence vel non of . . . a [constitutional] violation turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time. Subjective intent alone . . . does not make otherwise lawful conduct illegal or unconstitutional. . . .
" '. . . .
 " '[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.' Scott v. United States, 436 U.S. 128, 136
[98 S.Ct. 1717, 1722, 56 L.Ed.2d 168] (1978)."
Powell v. State, 548 So.2d 590, 600 (Ala.Cr.App. 1988).
 III.
Appellant also contends that it was error to admit the evidence obtained from the # 10 trailer at Lake's Trailer Park because the search warrant facilitating its discovery was issued without probable cause, particularly probable cause to believe that appellant was located on these premises.
As was the case with regard to appellant's challenge of the fugitive arrest warrant, we find here that appellant has no standing to challenge the search of the # 10 trailer, because he failed to establish that he had a legitimate expectation of privacy therein.
 "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises *Page 463 
or property has not had any of his Fourth Amendment rights infringed. Alderman [v. United States], 394 U.S. [165], 174 [89 S.Ct. 961, 966, 22 L.Ed.2d 176] . . . [(1969)]. And since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, United States v. Calandra, 414 U.S. 338, 347 [94 S.Ct. 613, 619, 38 L.Ed.2d 561] (1974), it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections."
Rakas v. Illinois, 439 U.S. at 134, 99 S.Ct. at 425 (footnote omitted). An unlawful search violates only the Fourth Amendment rights of an individual who has a "legitimate expectation of privacy in the premises" searched. Id. at 143, 99 S.Ct. at 430. The burden is on the defendant claiming such a violation to prove that, at the time of the search, he had a "legitimate expectation of privacy" in that place. Rawlings v. Kentucky,448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980). One who is wrongfully on the premises of another is not entitled to Fourth Amendment protections from searches of those premises, because he has no legitimate expectation of privacy therein. See Rakas v. Illinois. See also United States v. Pitt,717 F.2d 1334 (11th Cir. 1983), cert. denied, Kane v. UnitedStates, 465 U.S. 1068, 104 S.Ct. 1421, 79 L.Ed.2d 746 (1984).
Having previously discussed, within this opinion, appellant's failure to establish that he was not wrongfully in the # 10 trailer, we will not endeavor to repeat that analysis here. However, upon that analysis, we find that appellant lacked a legitimate expectation of privacy in the # 10 trailer to allow him to challenge the search thereof. Therefore, the trial court did not err in denying appellant's motion to suppress, and the fruits of the search of the # 10 trailer were properly admitted into evidence.
 IV.
Pursuant to A.R.App.P. 45A, the following scope of review is applicable is death cases:
 "In all cases in which the death penalty has been imposed, the court of criminal appeals shall notice any plain error or defect in the proceedings under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial right of the appellant."
We have complied with this standard of review in the present case and have found no plain error or defect in the proceedings warranting reversal.
In addition to the aforementioned, this court must also review the imposition of the death penalty by determining each of the following: (1) "[W]hether any error adversely affecting the rights of the defendant was made in the sentence proceedings"; (2) "whether the trial court's findings concerning the aggravating and mitigating circumstances were supported by the evidence"; and (3) "whether death was the proper sentence in the case." § 13A-5-53(a), Code of Alabama 1975. We have reviewed the record of the sentencing process in this case pursuant to this three-tiered analysis, and we make the following determinations. First, we have conducted a complete review of the sentence process and have found that it does not reflect any error. Second, the trial court found that two aggravating circumstances existed in this case: (1) "A Capital Offense was committed while the Defendant was engaged in the commission of Robbery, First Degree," see § 13A-5-49(4); and (2) "The Defendant was previously convicted of a felony involving the use, or threat of violence to a person," see §13A-5-49(2). The trial court found that none of the mitigating circumstances listed in § 13A-5-51 existed; however, the court did find "the existence of additional mitigating circumstances not enumerated by Statute." These circumstances related to appellant's background and character and were properly considered by the court pursuant to § 13A-5-52. After due consideration of the aforementioned, the trial court determined the following:
 "The Court has carefully weighed the aggravating and mitigating circumstances *Page 464 
which it finds to exist in this case and has considered the jury's recommendation of death contained in its advisory verdict. The mitigating circumstances have weighed heavily in those considerations, but it is the judgment of the Court that the aggravating circumstances outweigh the mitigating circumstances in this case."
We have reviewed the evidence presented of both the aggravating and mitigating circumstances, and we find that such evidence amply supports the trial court's findings concerning the aggravating and mitigating circumstances and its finding that the aggravating circumstances outweigh those of mitigation, § 13A-5-53(a).
Finally, with regard to whether death was the proper sentence in this case, the record bears no indication that the sentence was "imposed under the influence of passion, prejudice, or any other arbitrary factor," § 13A-5-53(b)(1). Our independent weighing of the aggravating and mitigating circumstances established by the evidence in this case leads us to the conclusion that the death sentence is appropriate, §13A-5-53(b)(2). Similar cases in this state are consistently punished capitally. See e.g., Magwood v. State, 494 So.2d 124
(Ala.Cr.App. 1985), aff'd, 494 So.2d 154 (Ala. 1986), cert. denied, Magwood v. Alabama, 479 U.S. 995, 107 S.Ct. 599,93 L.Ed.2d 599 (1986); Thomas v. State, 460 So.2d 207 (Ala.Cr.App. 1983), aff'd, 460 So.2d 216 (Ala. 1984); Waldrop v. State,459 So.2d 953 (Ala.Cr.App. 1983), aff'd, 459 So.2d 959 (Ala. 1984), cert. denied, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323
(1984); Weeks v. State, 456 So.2d 395 (Ala.Cr.App. 1983), aff'd, 456 So.2d 404 (Ala. 1984), cert. denied, 471 U.S. 1030,105 S.Ct. 2051, 85 L.Ed.2d 324 (1984). The capital offense of robbery-murder represents two-thirds of all cases in Alabama in which the death penalty is imposed. Thomas v. State, 460 So.2d at 225. Although appellant's co-defendant, who was initially charged for the capital offense as well, ultimately received a life sentence for a plea to murder, we are of the opinion that appellant's sentence of death was none the less appropriate in this case. "The sentences received by co-defendants must be considered by this court in determining the appropriateness of a death sentence on appeal, Beck v. State, 396 So.2d [645,] 664 [Ala. 1980], but they are not controlling per se." Thomas v.State, 460 So.2d at 226. The evidence in the instant case established that appellant was the "triggerman," and this point alone is sufficient to justify the disparity in the sentences.Id. Upon consideration of both the crime and the defendant in this case, we are convinced that the death penalty was not either "excessive or disproportionate to the penalty imposed in similar cases," § 13A-5-53(b)(3).
We have conducted a complete review of the records of both the guilt and sentence phases of this case and have found neither to contain any error warranting reversal. We believe that there was ample evidence presented to the jury to support its verdict of guilt and to the trial court to support its imposition of the death penalty, and we concur in each of those determinations. Therefore, appellant's conviction and sentence of death are due to be, and they are hereby, affirmed.
AFFIRMED.
All Judges concur.
 APPENDIX In the Circuit Court of Cullman County, Alabama State of Alabama, vs. Doyle Lee Hamm, Defendant, Case No. CC 87-121 SENTENCING ORDER
The Defendant, Doyle Lee Hamm, was charged by way of Grand Jury Indictment returned April 9, 1987, with the Murder of Patrick Joseph Cunningham, while in the course of committing a Robbery in the First Degree, a Capital Offense. A jury verdict was returned on September 26, 1987, wherein, the Defendant was found guilty of the Capital Offense as charged in the Indictment. Thereafter, on the same date the Court adjudged the Defendant *Page 465 
guilty as charged in the Indictment in accordance with the said jury verdict. Thereafter, a separate sentence hearing was conducted before the same jury and on September 28, 1987, that jury returned a recommendation that the Defendant be sentenced to death as punishment.
The Court did order and has received a written pre-sentence investigation report. The report did, in all respects, contain the information required and prescribed by law and by this Court for this type case. The report was made available to both the Defendant and the State. This hearing was conducted pursuant to Section 13A-5-47, Code of Alabama, 1975, as amended. The Defendant was present with his Attorneys, Hugh Harris and Martha Williams, and the State was represented by the District Attorney, Len Brooks, and Special Prosecutor, Tom Sorrells. The parties incorporated into the record all evidence previously heard regarding the existence of aggravating and mitigating circumstances and additional evidence was presented regarding the existence of mitigating circumstances by the Defendant. The State, through its counsel, argued that the Court should fix the Defendant's punishment at death, in accordance with the jury's recommendation, whereas, Defendant, through his counsel, argued that the Court should fix the Defendant's punishment at life in prison without parole.
STATEMENT OF FACTS SUMMARIZING THE CRIME AND DEFENDANT'S PARTICIPATION IN THE CRIME
On the night of Saturday, January 24, 1987, the Defendant, along with Regina Ann Wallace Roden and her brother-in-law, Douglas W. Roden, left Lakes Trailer Park near the West Point Community in Cullman County, Alabama, and drove into the City of Cullman. Prior to leaving the trailer park, the Defendant had stated that he wanted to get some money and as the vehicle in which the parties were riding passed the Anderson Motel, which is located on Highway 31, North, in the City of Cullman, Alabama, the Defendant directed Regina Ann Wallace Roden, who was driving the vehicle, to turn around and drive up to the motel, which she did. The Defendant had, at that time, a .38 caliber pistol in his possession. The Defendant and the Rodens were traveling in a four door white Datsun Vehicle with a loud muffler.
The Defendant and Douglas Roden entered the motel office and Regina Ann Wallace Roden remained in the vehicle. Patrick Joseph Cunningham was an employee of the Anderson Motel and was the Clerk on duty and in charge of the motel office at that time. Douglas Roden approached Mr. Cunningham first and, thereafter, the Defendant approached Mr. Cunningham and presented the .38 caliber pistol to him. Douglas Roden had stepped out of the motel office at that time, or was standing near the door where he could observe the actions of the Defendant and Mr. Cunningham. The Defendant had a conversation with Mr. Cunningham at that time and, thereafter, forced Mr. Cunningham to lie down on the floor in the corner behind the counter situated in the lobby. He asked Mr. Cunningham for whatever was in his pockets.
The Defendant in his statement to police said that Mr. Cunningham "was smart". "He didn't think I was for real when I had the gun on him". The Defendant shot Mr. Cunningham once in the left temple, which shot caused his death. The Defendant then proceeded to take money from the motel in the approximate amount of Three Hundred Fifty and 00/100 ($350.00) Dollars. After he shot Mr. Cunningham, he took his wallet and its contents, including Sixty and 00/100 ($60.00) Dollars from his person.
As the Defendant and Douglas Roden entered the motel lobby, a woman who had just rented a motel room was leaving the lobby and she observed the .38 caliber pistol. She cautiously left the motel and proceeded to the nearest telephone that she could locate. She notified the police of the existing situation and the police immediately rushed to the motel and began their investigation. She gave the police a description of the two people she saw in the motel, including a description of the vehicle *Page 466 
in which they arrived. When the police arrived at the motel, the Defendant and the two Rodens had left the motel and returned to the Lakes Trailer Park. The police found that a robbery had been committed at the motel office and that Mr. Cunningham had been shot and was dead. Douglas Roden and Regina Ann Wallace Roden were taken into custody in Decatur, Alabama, the following day and were transported to Cullman. A Search Warrant was obtained the next day for the trailer located at the Lakes Trailer Park. The Defendant was taken into custody at that time. The police located the .38 caliber pistol, which was later determined to be the pistol used by the Defendant on the previous night. Some money was found and, also, found was a green army jacket, which was identified as being worn by the Defendant at the motel on the night before when the crime was committed, as well as other items of personal property.
STATEMENT OF FINDINGS CONCERNING THE EXISTENCE OR NON-EXISTENCE OF AGGRAVATING CIRCUMSTANCES
Section 13A-5-47, Code of Alabama, 1975, as amended, requires that the trial Court enter specific written findings concerning the existence or non-existence of each aggravating circumstance enumerated in Section 13A-5-49 of said Code. The Court does find and determine that none of the aggravating circumstances enumerated in Section 13A-5-49 of said Code were proved to exist beyond a reasonable doubt in any of the proceedings had before this Court and none are considered, except the following aggravating circumstances enumerated therein, which the court finds to have been proved to exist beyond a reasonable doubt.
1. A Capital Offense was committed while the Defendant wasengaged in the commission of Robbery, First Degree, to-wit:
 The jury verdict establishes the existence of this aggravating circumstance and that verdict is supported by the evidence;
2. The Defendant was previously convicted of a felonyinvolving the use, or threat of violence to a person, to-wit:
 The Defendant was previously convicted of two counts of simple Robbery in the State of Tennessee, on February 2, 1978, for which he was given a five year sentence on each count to be served concurrently.
STATEMENT OF FINDINGS CONCERNING THE EXISTENCE OR NON-EXISTENCE OF MITIGATING CIRCUMSTANCES
 I
The Statute above mentioned requires that the trial Court enter specific findings concerning the existence or non-existence of each mitigating circumstance enumerated in Title 13A-5-51 of said Code, including any mitigating circumstances produced relative to Section 13A-5-52 of said Code. The Court does find, based upon all the matters presented, that none of the following mitigating circumstances enumerated in said Code existed in this case.
1. The Defendant has no significant history of prior criminalactivity;
 The pre-sentence investigation, which was not disputed by the Defendant, indicates that the Defendant does have a significant history of prior criminal activity beginning in 1973, when he was ordered to pay a fine and court cost for damaging personal property at the Sheffield Police Department. The Defendant's record indicates convictions in 1974 for Highway Intoxication, and No Driver's License. Defendant's record further indicates that in 1975 he was convicted of No Driver's License and Burglary, Second Degree. In 1978, Defendant was convicted of two counts of simple Robbery in the State of Tennessee and was, also, convicted of Escape in that State. In 1980, Defendant was convicted in the State of Mississippi of Burglary of An Auto and in 1982 of Burglary of a Dwelling.
2. The Capital Offense was committed while the Defendant wasunder the influence *Page 467 of extreme mental or emotional disturbance;
 There is no evidence that the Defendant was under the influence of extreme mental or emotional disturbance. The Defendant had a medical history of having suffered from epilepsy, but there was no evidence which related this fact to the commission of the Capital Offense. The Court required that a mental evaluation be conducted and a report of that evaluation dated July 2, 1987, expressed an opinion that the Defendant was not suffering from any mental illness or defect at the time of his evaluation, nor at the time of the commission of the alleged offense. The opinion expressed, also, that the evaluation failed to reveal any substantial evidence of any psychological abnormality in the Defendant at the time of the commission of the alleged crime.
3. The victim was a participant in the Defendant's conduct orconsented to it;
 There is no evidence at all to support the existence of this mitigating circumstance. The evidence is to the contrary, in that, it indicates that the victim and the Defendant were complete strangers. The evidence indicates that the victim, Mr. Cunningham, refused to remove anything from his pockets when instructed to do so by the Defendant and that after being required by the Defendant to lie on the floor facing the wall, that the Defendant shot the victim, Mr. Cunningham, in the temple with a .38 caliber pistol at a range of four feet.
4. The Defendant was an accomplice in the Capital Offensecommitted by another person and his participation wasrelatively minor;
 There is no evidence to find the existence of this mitigating circumstance, in fact, the evidence is to the contrary, in that, the Capital Offense was committed by the Defendant who, on this occasion, directed Regina Ann Wallace Roden to drive the vehicle in which they were traveling up to the Anderson Motel. The Defendant was at that time armed with a .38 caliber pistol and he and Douglas Roden left the vehicle, entered the motel and Defendant made it known to the victim, Mr. Cunningham, that he intended to rob him while presenting to him the .38 caliber pistol. The Defendant thereafter proceeded to kill the victim by shooting him in the temple with the .38 caliber pistol. The Defendant removed the victim's wallet and proceeded to take what money he could find from the motel cash drawer and left the motel with these items in his possession. He returned to the vehicle and directed Regina Ann Wallace Roden to drive away, which she did. The evidence indicates that Douglas Roden was acting at the direction of the Defendant.
5. The Defendant acted under extreme duress or under thesubstantial domination of another person;
 There is no evidence whatsoever to support the finding of the existence of this mitigating circumstance. The evidence is to the contrary, in that, the Defendant was in charge on this occasion. The Defendant had the .38 caliber pistol. He directed the drive to the Anderson Motel and did, in fact, direct the others involved in the crime and actually took the personal control of the property taken in the robbery.
6. The capacity of the Defendant to appreciate thecriminality of his conduct, or to conform his conduct to therequirements of law was substantially impaired;
 There was evidence presented at the trial that the Defendant had been voluntarily using alcohol and drugs at or prior to the occasion of this crime. The Court, based on the evidence presented at the trial of the case, instructed the jury with regard to the law as it relates to voluntary intoxication from the use of alcohol or drugs. The jury found the Defendant guilty of the Capital Offense, obviously rejecting the theory that the Defendant's mental capacity was diminished by intoxication to the extent that he could not form the intent required of the offense for which he was charged. That verdict is supported by the evidence. As stated previously an evaluation of the mental *Page 468 
capacity of the Defendant was conducted and in a report of that lunacy commission dated July 2, 1987, the opinion was expressed that the Defendant was not suffering from a mental illness or defect at the time of the alleged offense. The statement of the Defendant given police on January 26, 1987, indicates that the Defendant had a clear recall of the events surrounding the commission of the Capital Offense. The Defendant was able to describe the appearance of the victim on that occasion, even describing the way he was dressed on that occasion. He was able to recall what was said on that occasion and was aware of the presence of the lady, who ultimately called the police and reported the crime. He recalled the position of the victim at the time he was shot and accurately described the general layout of the motel office.
7. The age of the Defendant at the time of the crime;
 This mitigating circumstance did not exist, in that, the Defendant was 29 years of age at the time of the commission of the Capital Offense.
 II
Pursuant to 13A-5-52, of said Code, the Court finds the existence of additional mitigating circumstances not enumerated by Statute as follows:
 The Defendant was born February 14, 1957, and Defendant was raised by his Mother and Father and lived in Colbert County, Alabama, until 1975. Defendant was the eighth of ten children born to these parents. It appears that he had a good Mother, but not much can be said of his Father. It appears that his Father was a heavy drinker and had spent time in prison. It seems that he tried to instill in his children the idea that if they did not steal they weren't a "Hamm". The Defendant's Father died in 1971 when Defendant was 13 years old. Afterwards, he was raised by his Mother. Ruthie Murphree, his Sister, helped the Mother raise the Defendant. Ruthie is slightly older than the Defendant and has no record of criminal activity. She is married and is a housewife. The Defendant's Brothers, James, Roy, Horace, Jimmy, O'Neal, David, and Danny, all either served time in prison or are now serving time in prison. James died in 1969 and Roy hanged himself in 1978. Defendant has another Sister, Linda Hamm Murphree, age 29, who is married to Johnny Murphree and who appears to be a nice person who has never been in trouble. She is married to Johnny Murphree who is a Brother to Ruthie's husband. The fact that the Defendant and all his Brothers have prison records is certainly an indication that their Father was a terrible influence on his children. His conduct while participating in the raising of these boys created an obstacle to the development of their character, which was, indeed, difficult to overcome. The Defendant had no control over the conduct of his Father and, of course, this type of conduct by his Father was irresponsible and deplorable. It absolutely had a negative influence on the Defendant. It is to be noted, however, that the two girl children were able to rise above this influence and appear to be good citizens. The Defendant had a poor education and suffered from epilepsy.
 The Defendant has, since his conviction of this offense and while being incarcerated in the Cullman County Jail, agreed to talk to offenders about changing the direction of their lives away from crime. Defendant allowed law enforcement personnel to use him and his situation as an example of how crime can ruin your life. The Defendant did voluntarily confess to the crime.
 CONCLUSION
The Court has carefully weighed the aggravating and mitigating circumstances which it finds to exist in this case and has considered the jury's recommendation of death contained in its advisory verdict. The mitigating circumstances have weighed heavily in these considerations, but it is the Judgment of this Court that *Page 469 
the aggravating circumstances outweigh the mitigating circumstances in this case.
It is ORDERED and ADJUDGED, and the sentence of this Court is, that the Defendant be punished by death. The sentence shall be executed by electrocution as prescribed by law. The date of electrocution shall be set by the Alabama Supreme Court pursuant to Alabama Rule of Appellate Procedure 8(d)(1). The Defendant shall be transferred immediately to the State Department of Corrections.
DONE, this 1st day of December, 1987.
 /s/ Fred Folsom Fred Folsom, Circuit Judge, Thirty-Second Judicial Circuit, Cullman County, Alabama.
[1] The trial court's sentencing order setting out its written findings as to aggravating and mitigating circumstances and its written findings of fact summarizing the crime and appellant's participation in it is attached as an appendix to this opinion and is made a part thereof.
[2] Here, Uselton's trailer was surrounded by two SWAT teams and the occupants were told, over a public address system, that "they were surrounded and to come out with their hands up." They emerged from the trailer after numerous orders. We find that appellant was placed under arrest at the moment the police encircled the trailer. See Al-Azzawy; United States v. Morgan,743 F.2d 1158 (6th Cir. 1984), cert. denied, 471 U.S. 1061,105 S.Ct. 2126, 85 L.Ed.2d 490 (1985). It matters not that the police did not cross the threshhold of the trailer, for they constructively entered. Id. Thus, we consider the arrest of appellant to have occurred while he was present inside a private home.