534 So.2d 656 (1986)
Ex parte John Ronald DANIELS.
Re: John Ronald Daniels
v.
State.
No. 85-442.
Supreme Court of Alabama.
September 5, 1986.
John Bertolotti, Jr., Mobile, for petitioner.
Charles A. Graddick, Atty. Gen., and Helen P. Nelson and Ed Carnes, Asst. Attys. Gen., for respondent.
PER CURIAM:
John Ronald Daniels, the defendant herein, was indicted and convicted under Alabama's 1975 capital punishment statute, §§ 13-11-1 through 13-11-9, Code 1975 (repealed 1981).[1] For the murders of Cheryl Moore and Richard Brune he received the death penalty pursuant to § 13-11-2(a)(10), which proscribes that penalty upon a conviction of first degree murder wherein two or more people are intentionally killed by one or a series of acts. In an excellent opinion, authored by Judge Patterson, the Court of Criminal Appeals affirmed the defendant's conviction, but found error in the trial court's sentencing order and remanded for resentencing. See Daniels v. State, 534 So.2d 628 (Ala.Cr.App.1985). The defendant filed a petition for certiorari, which we granted pursuant to Rule 39(c), Ala.R.App.P.
Having carefully read and considered the record, together with the briefs and arguments of counsel, we conclude that the judgment of the Court of Criminal Appeals is due to be affirmed.
AFFIRMED.
SHORES, BEATTY, ADAMS, HOUSTON[2] and STEAGALL, JJ., concur.
TORBERT, C.J., and JONES and ALMON, JJ., dissent.
MADDOX, J., not sitting.
*657 TORRBERT, Chief Justice (dissenting).
The defendant contends that the Court of Criminal Appeals erred in its determination that he was not prejudiced, and thus was not entitled to a new trial, because of the application of the "preclusion clause" in § 13-11-2(a), Code 1975, which precluded any instructions to the jury concerning lesser included offenses. I agree that the Court of Criminal Appeals erred; therefore, I dissent.
Applying the test which this Court set out in Cook v. State, 431 So.2d 1322 (Ala. 1983), to determine the effect of the preclusion clause on a trial held prior to Beck v. State, 396 So.2d 645 (Ala.1980), the Court of Criminal Appeals concluded that there was no evidence presented at trial upon which a conviction of a lesser included offense could have been based. The court correctly acknowledged that the defendant's assertion of an alibi defense did not foreclose his right to jury instructions on any lesser included offenses. See Ex parte Pruitt, 457 So.2d 456 (Ala.1984); Ex parte Stork, 475 So.2d 623 (Ala. 1985). A defendant has a right to have the jury instructed on lesser included offenses if there is a reasonable theory from the evidence supporting his or her position, regardless of whether the State or the defendant offers the evidence. Ex parte Pruitt, supra.
In Chavers v. State, 361 So.2d 1106 (Ala. 1978), the Court stated:
"An individual accused of the greater offense has a right to have the court charge on the lesser offenses included in the indictment, when there is a reasonable theory from the evidence supporting his position. Fulghum v. State, 291 Ala. 71, 277 So.2d 886 (1973). A court may properly refuse to charge on lesser included offenses only (1) when it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense, or (2) when the requested charge would have a tendency to mislead or confuse the jury. Lami v. State, 43 Ala.App. 108, 180 So. 2d 279 (1965). In fact, our decisions are to the effect that every accused is entitled to have charges given, which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, however weak, insufficient, or doubtful in credibility. Burns v. State, 229 Ala. 68, 155 So. 561 (1934)." 361 So.2d at 1107.
The defendant argues that the jury could have reasonably inferred from the evidence presented at trial that he was guilty of the noncapital offense of first degree murder. Defendant argues in his brief:
"The Court of Criminal Appeals ruled, however, that the evidence in this case did not warrant lesser included offense instructions. Their conclusion is erroneous. The only evidence directly linking John Ronald Daniels to the killings is the testimony of Melvin Turberville. Turberville testified that while he was in the county jail, Daniels admitted that he and Tomlin had killed the victims. This witness was impeached in just about every way you can impeach a witness. One of the attorneys for the Defendant testified that he had interviewed Mr. Turberville a week or so prior to trial, and that Turberville had said Daniels had not told him anything about the case. On cross-examination, Turberville admitted he had said this to the lawyer. Two police officers from Turberville's hometown testified that his reputation for veracity was bad and that they would not believe him under oath. Another inmate of the county jail testified that, while in jail, Turberville mistook him for the co-defendant Phillip Tomlin. After finding out that this witness was not Tomlin, Turberville told him that an assistant D.A. wanted to make a deal with him to testify against Tomlin, but that he didn't know anything. In addition, the defense introduced evidence that Turberville had been convicted of several crimes of moral turpitude, showed that he was using marijuana, valium and some kind of intravenous drug while in jail, and that he tried to get some kind of favorable treatment in return for his testimony.
"The opinion of the Court of Criminal Appeals relies heavily on the testimony of Turberville in reaching its conclusion that no lesser included charges should *658 have been given. Petitioner submits that it is possible that a rational jury could have concluded that they were not going to rely on the testimony of a witness who had been so throughly impeached. Without this testimony, all the State proved was that Daniels accompanied Tomlin to Mobile and knew that Tomlin intended to kill Ricky Brune. Based on this, the jury had to conclude that Daniels played some role in a very serious crime. What role he played is left open to serious doubt by the State's case.
"There was also evidence brought out by the defense to indicate that someone other than Daniels was present when the two victims were killed. Two witnesses stated that they saw an older model white Chevrolet near the location where the two bodies were found, at or near the time of the killings. Another testified that the Shanks brothers, who testified for the State, were driving a ragged 1962 white Chevrolet several months before the killings. There was evidence that Phillip Tomlin and Charles Shanks were seen getting out of a car at the Shanks residence a short distance from the murder scene within minutes of the time of the murders. One of them was carrying a shotgun (the murder weapons were a pistol and a shotgun).
"Under the facts of this case, it is possible that a rational jury might conclude that Daniels was guilty of capital murder, but it cannot be said as a matter of law that a jury could convict of the capital offense and nothing else. In order to conclude that there should be no lesser included offense instructions, this Court must rule that no juror could have decided he was going to discount the testimony of Melvin Turberville. Given the extent to which Turberville was impeached and the other evidence before the jury in this case, that conclusion is not warranted. The Defendant should get a new trial with lesser included offense instructions."
The thrust of the defendant's argument is that the jury could have reasonably inferred that, although he traveled to Alabama for the purpose of assisting Phillip Tomlin in the killing of Ricky Brune, he was not actually present at the time the murders took place and, thus, that he lacked the "particularized intent" to kill Cheryl Moore. See Ex parte Raines, 429 So.2d 1111 (Ala.1982) (requiring proof of a "particularized intent to kill" by a non-triggerman accomplice).
Having carefully read and considered the record, I think it does appear that the credibility of Melvin Turberville was subject to serious question by the jury. His testimony was the only evidence directly placing the defendant at the scene of the murders. There was also evidence that Tomlin and Charles Shanks were seen getting out of a car at the Shanks residence a short distance from the murder scene and within minutes of the time of the murders. One of them was carrying a shotgun.
In light of the above, it is certainly within reason to suppose that the jury, after considering the evidence as a whole, could have found the defendant guilty of first degree murder had they been afforded the opportunity.
I would hold that the defendant was prejudiced by the application of the preclusion clause. Therefore, I dissent.
JONES and ALMON, JJ., concur.
NOTES
[1] The 1975 capital punishment statute, as contained in §§ 13-11-1 through 13-11-9, was carried over intact to the new criminal code as §§ 13A-5-30 through 13A-5-38. These sections of the new criminal code were repealed, effective July 1, 1981, by the 1981 capital offense statute, but only as to conduct occurring on or after July 1, 1981. Therefore, conduct occurring before July 1, 1981, as in the present case, is governed by the preexisting law, i.e., §§13-11-1 through 13-11-9. See Spears v. State, 428 So.2d 174 (Ala.Cr.App.1982).
[2] Although Justice Houston did not sit at oral arguments, he has listened to the tapes of the arguments.