Robert Clinton Smiley, the appellant, was charged in a single indictment with ten counts of robbery in the first degree. These charges were based on five separate robberies of store cashiers that occurred in Decatur in late October 1990. At the close of its case-in-chief, the State moved to dismiss the two charges relating to one of the robberies because the victim of that particular robbery did not appear at trial. The *Page 214 
remaining eight counts were submitted to the jury, which returned four convictions of robbery in the third degree. The trial court sentenced the appellant as a habitual offender to fifteen years' imprisonment on each conviction, with two of the sentences to run consecutively and the remaining two to run concurrently with those running consecutively. Three issues are raised in this appeal; all three concern the search of the apartment in which incriminating items were found.[1]
The appellant was arrested around noon on November 1, 1990, on an outstanding misdemeanor warrant and for failing to appear on a speeding ticket. At the time of his arrest, the appellant was the suspected perpetrator of the robberies, having been identified by two police officers from their review of store surveillance video tapes of some of the robberies. The afternoon of the arrest, several Decatur police officers went to the residence of the appellant's mother because the appellant "stayed there sometimes." R. 19. With the written consent of the appellant's mother, Ms. Carolyn Langford, the officers searched her residence but found no incriminating evidence.
The appellant's sister, Ms. Rachel Wiggins, was present at Ms. Langford's residence when it was searched. Shortly after the search of Ms. Langford's residence, Ms. Wiggins accompanied the officers to the West Court Apartments. Once at the apartments, Ms. Wiggins signed a consent to search form for apartment # 11, which was leased to her. During the search of this apartment, the officers found a jacket, which was later identified by some of the robbery victims as the jacket worn by the robber, and a black starter's pistol, which was later identified by some of the robbery victims as the gun wielded by the robber.
 I
The appellant contends that his sister did not have authority to validly consent to the search of the West Court apartment because she "had abandoned the premises and had relinquished control over the premises in question to the [appellant]." Appellant's brief at 6.
A suppression hearing was held immediately prior to the appellant's trial. At this hearing, Decatur Police Detective Sergeant Johnny Coker testified that the officers went to the West Court apartment "[b]ecause Ms. Wiggins who was present at [Ms. Langford's residence] said that Mr. Smiley was staying at her residence sometimes." R. 20. Coker stated that Ms. Wiggins voluntarily accompanied the officers to the West Court Apartments, where she pointed out # 11 as her apartment. Coker also testified that Ms. Wiggins told the officers "that the apartment was hers," "that her brother, Mr. Smiley, was staying there with her consent," and "[t]hat her utilities had been cut off for lack of payment and the apartment was hers, but she stayed with her boyfriend sometime." R. 13-14. During the search of the apartment, the officers found "clothing in each bedroom. Some male, some female." R. 14.
Ms. Wiggins testified at the suppression hearing that, at the time of the search, she was staying with her boyfriend at 1601 Jackson Street, that she had been doing so "continuously" for "[a]bout four months," and that she did not have any clothes at the West Court apartment. R. 36. She stated that she had given her brother permission to live in the apartment, although they had no "formal agreement" about the matter, and that he had been living in the apartment "[a]bout a month" at the time of the search. R. 36-39. Ms. Wiggins also testified that she had given her brother the keys to the apartment and that she did not have a set of keys herself. She stated that "[t]he detectives had the keys to [her] apartment and [they] said [the appellant] had g[iven] them to them." R. 39. *Page 215 
On cross-examination by the prosecutor, Ms. Wiggins stated that the West Court apartment was "listed in" her name, but that she did not pay any rent on this apartment because she "was under Section Eight." R. 45. Although she maintained that she had "basically moved out and was living with [her] boyfriend at the time," she testified that her "dishes and all of that" were still in the apartment. R. 44. She acknowledged that, while she had given her keys to the appellant, "really that was still [her] apartment, . . . [she] w[as] just letting him live there." R. 45.
In response to specific questioning by the trial judge, Ms. Wiggins acknowledged that she had "signed the lease . . . for this apartment," that she "had a right to come and go when [she] wanted to," that she had "a right to take that furniture out and dispose of it if [she] wanted to," that she had "a right to take the dishes out and dispose of them if [she] wanted to," that she had "a right to move back into that apartment and live there if [she] wanted to," and that she had "a right to remove the Defendant or tell him to leave the apartment and not come back." R. 46-48. At the close of the suppression hearing, the trial judge denied the appellant's motion to suppress, stating, "I find from the testimony that the consent was valid and that the search was proper, based upon that consent to search." R. 55.
The United States Supreme Court has made it clear that a valid consent to search may be given by a third party who "possesse[s] common authority over or other sufficient relationship to the premises or effects sought to be inspected." United States v. Matlock, 415 U.S. 164, 171,94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). The authority of a third party to consent to a search is "not to be implied from the mere property interest a third party has in the property." Id.
at n. 7. For example, "[a] landlord does not have authority to permit a search of his tenant's leasehold, Chapman v. UnitedStates, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961), and the same holds for a tenant and his sub-tenant." United Statesv. Chaidez, 919 F.2d 1193, 1201 (7th Cir. 1990), cert. denied, ___ U.S. ___, 111 S.Ct 2861, 115 L.Ed.2d 1028 (1991). Instead, the authority of a third person to consent to a search turns on whether the third person and the defendant "mutually used the property searched and had joint access to and control of it for most purposes so that it is reasonable to recognize that either user had the right to permit inspection of the property and that the complaining co-user had assumed the risk that the consenting co-user might permit the search." United States v.Rizk, 842 F.2d 111, 112-13 (5th Cir.), cert. denied,488 U.S. 832, 109 S.Ct. 90, 102 L.Ed.2d 66 (1988). Accord United Statesv. Matlock, 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7. See also Frazier v. Cupp, 394 U.S. 731, 740, 89 S.Ct. 1420, 1425,22 L.Ed.2d 684 (1969). "The burden of establishing th[e] common authority [necessary for a valid consent] rests upon the State" and may be met by proof of either actual or apparent authority.Illinois v. Rodriquez, 497 U.S. 177, 181, 185-89,110 S.Ct. 2793, 2797, 2800-01, 111 L.Ed.2d 148 (1990).
According to Detective Sergeant Coker, Ms. Wiggins stated unequivocally that the West Court apartment "was hers," although she was permitting the appellant to stay there. Compare United States v. Chaidez, 919 F.2d at 1201 (third party told officers " 'that she had rented the property for her [step]father,' " which raised the possibility of a sublease situation and, without further information, vitiated apparent authority). Ms. Wiggins' own testimony at the suppression hearing clearly established that she was the sole lessee of the West Court apartment and that she had not sublet the apartment to the appellant. Contrary to the appellant's assertion, the evidence also shows that Ms. Wiggins had not "abandoned" the apartment. Throughout her suppression hearing testimony, Ms. Wiggins referred to the West Court apartment as "my apartment." By her own admission, Ms. Wiggins had left her household possessions in the apartment. She acknowledged that she was merely allowing the appellant to live in the apartment and that she had the right to enter the apartment at any time, the right to remove *Page 216 
her furniture and dishes, and the right to order the appellant to vacate the apartment. We also note that when defense counsel asked Ms. Wiggins where she was during the search of the apartment, she responded: "I was going back and forth. It was three of them [police officers]. One of them in my bedroom and one in my living room and my other room. I was going back and forth, trying to keep an eye on all of them." R. 42 (emphasis added).
Moreover, the trial judge had before him the testimony of Detective Sergeant Coker, who stated that Ms. Wiggins told the officers that "she stayed there [at the West Court apartment] sometimes. Sometimes stayed with her boyfriend." R. 14. While Ms. Wiggins's testimony conflicted with Coker's on this point and as to whether she kept any clothes in the apartment, "conflicting evidence given at [a] suppression hearing presents a credibility choice for the trial court." Atwell v. State,594 So.2d 202, 212 (Ala.Cr.App. 1991), cert. denied, 594 So.2d 214
(Ala. 1992). We think the evidence adduced at the suppression hearing adequately established that Ms. Wiggins, as the lessee and sometimes occupant of the West Court apartment, had not only apparent authority, but also actual authority to consent to the search. See United States v. Chaidez, 919 F.2d at 1201-02 (defendant's stepdaughter, who was the lessee of the house searched, had actual authority to consent to the search where utilities were in her name (although they were turned off) and women's clothing was found in the house, even though both she and defendant claimed that she did not live at the house); United States v. Klotz, 943 F.2d 707, 708-09 (7th Cir. 1991) (trial court was not in error in finding that defendant's wife, who was the lessee of a storage locker and who did not know that lease had been extended after expiration date, had apparent authority to consent to search of locker "and her authority was not diminished by suprise that the lease had been extended").
We note that Ms. Wiggins's testimony that she did not, at the time of the search, have a key to the apartment, was uncontested. We recognize that "possession of a key [to the premises searched] in itself has special significance" in determining the validity of a third party consent. UnitedStates v. Guzman, 852 F.2d 1117, 1122 (9th Cir. 1988) (court found that woman had authority to consent to search where she identified herself as defendant's wife, stated that she was the lessee of the premises, although she also stated that she did not always live there, and had the keys to the premises). See also United States v. Trzaska, 859 F.2d 1118, 1120 (2d Cir. 1988) (court found that defendant's estranged wife had authority to consent to search of apartment where she "had only recently moved out of the apartment," "she still possessed a key to the apartment, although she had to retrieve it from her sister in Great Neck, Long Island on the day [of the search]," and "she did remove some personal belongings from the apartment during the search"), cert. denied, 493 U.S. 839, 110 S.Ct. 123,107 L.Ed.2d 84 (1989). However, Ms. Wiggins's lack of a key does not negate her authority to validly consent to the search of the apartment. See United States v. Klotz, 943 F.2d at 708 (search upheld where officers obtained consent to search a storage locker from the defendant's wife, who was the lessee of the locker, then opened the locker with keys obtained from the defendant). Cf. United States v. Brannan, 898 F.2d 107, 108
(9th Cir.) (wife's consent to search of marital home of which she was a joint owner and in which she had left a substantial amount of her personal possessions, was valid despite the fact that after she had moved out of the residence the defendant had changed the locks on the house and wife's keys were useless), cert. denied, ___ U.S. ___, 111 S.Ct. 100, 112 L.Ed.2d 71
(1990); United States v. Long, 524 F.2d 660, 661 (9th Cir. 1975) (same).
Whether Ms. Wiggins had "moved out" of the West Court apartment was in dispute. However, she was undisputedly the sole lessee of the apartment, and she had left her furniture and household possessions there (as well as clothes, if Coker's testimony is to be believed). Ms. Wiggins was, by her own admission, concerned *Page 217 
about those possessions and went "back and forth" in the apartment during the search so that she could "keep an eye" on the officers. Thus, there are a number of factors pointing to Ms. Wiggins's authority to consent to the search that more than offset her lack of a key. We find that it "was reasonable for the trial court to conclude that [Ms. Wiggins] retained actual authority to consent to the search of the [West Court apartment]." United States v. Brannan, 898 F.2d at 108.
 II
The appellant argues that even if Ms. Wiggins had the authority to consent to the search, her consent was the product of coercion and was therefore involuntary and invalid.
At the suppression hearing, Ms. Wiggins testified that the police officers "told me that they could have a search warrant for my apartment within an hour or something. That's why I agreed to the search form or whatever, the consent form or whatever." R. 41. Her testimony on this point was uncontradicted.
When the State seeks to justify a search on the basis of consent, the prosecutor "has the burden of proving that the consent was, in fact, freely and voluntarily given."Schneckloth v. Bustamonte, 412 U.S. 218, 222, 93 S.Ct. 2041,2045, 36 L.Ed.2d 854 (1973), quoting Bumper v. North Carolina,391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968). The voluntariness of a consent "is a question of fact to be determined from the totality of all the circumstances."Schneckloth, 412 U.S. at 227, 93 S.Ct. at 2047-48.
 "In order to establish the voluntariness of a consent, the prosecutor must prove two distinct elements: (1) that the consent 'was evidenced by a statement or some overt act sufficient to indicate an intent to waive the constitutional right,' and (2) that 'there was no duress or coercion, express or implied.' Both elements must be established by 'clear and positive testimony.' "
McLemore v. State, 562 So.2d 639, 642 (Ala.Cr.App. 1989) (citations omitted). The prosecutor's burden of establishing the voluntariness of a consent "is not satisfied by showing a mere submission to a claim of lawful authority." Florida v.Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229
(1983).
We observe at the outset that the State did nothing to satisfy its burden on the voluntariness aspect. It was defensecounsel who established through the testimony of Officer Gary Walker, who participated in the search of the West Court apartment, that Ms. Wiggins did not "appear to be intoxicated or under the influence of any kind of controlled substances or anything of that nature" when she executed the consent to search form. R. 33. Defense counsel also elicited from Ms. Wiggins the information that, other than the officers stating that they could get a search warrant for her apartment, there were no "other threats or promises, inducements or anything else that was said to [her] to make [her] sign" the consent to search form. R. 43.
A review of the totality of the circumstances surrounding Ms. Wiggins's consent reveals that the only factor that militates against a finding of voluntariness is the statement by the officers that they could obtain a search warrant for Ms. Wiggins's apartment.[2] However, an officer's threat to obtain a search warrant does not necessarily vitiate consent. Miller v.State, 602 So.2d 488 (Ala.Cr.App. 1992). There is no coercion where an officer truthfully tells a person that the officer can obtain a warrant. United States v. Calvente, 722 F.2d 1019,1023 (2d Cir. 1983), cert. denied, 471 U.S. 1021,105 S.Ct. 2030, 85 L.Ed.2d 313 (1985). Accord United States v. Kaplan,895 F.2d 618, 622 (9th Cir. 1990) ("consent is not likely to be held invalid where an officer tells a defendant *Page 218 
that he could obtain a search warrant if the officer had probable cause upon which a warrant could issue"). In view of the facts that the officers had viewed video tapes of the robberies from which they were able to ascertain that the appellant was the robber[3] and that Ms. Wiggins had stated that the appellant was "staying" at her apartment, it is clear that the officers did, in fact, have probable cause upon which a search warrant could have issued. Consequently, their statements with regard to the search warrant cannot be viewed as coercive.
 III
As his last issue, the appellant asserts that because any consent by Ms. Wiggins was involuntary, the State can justify the warrantless search only if there was probable cause coupled with exigent circumstances. Because we have previously determined that Ms. Wiggins had the authority to consent to the search of her apartment and that her consent was voluntary, we need not address this issue.
For the reasons stated above, the judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] The State initially contends in its brief that the appellant does not have standing to challenge the validity of the search. Appellee's brief at 5-7. "However, the issue of standing was not raised by the State at trial and has therefore been waived." Cook v. State, 574 So.2d 905, 908 (Ala.Cr.App. 1990).
[2] The appellant appears to place some reliance for his position on the fact that the State did not introduce, at the suppression hearing, the consent form signed by Ms. Wiggins. However, defense counsel introduced this document at the suppression hearing, R. 55, thus making it unnecessary for the State to do so. We note that the State did introduce the consent form at trial. R. 282.
[3] We note that at the sentencing hearing, defense counsel, while requesting leniency for the appellant, acknowledged that there was "no question about it was [the appellant] on the videos. No question." R. 351.