663 So.2d 985 (1994)
Jeffery Day RIEBER
v.
STATE.
No. CR-91-1500.
Court of Criminal Appeals of Alabama.
June 17, 1994.
Rehearing Denied November 10, 1994.
*987 Richard Kempaner and Don Moran, Huntsville, for appellant.
James H. Evans, Atty. Gen., and Beth Hughes, Asst. Atty. Gen., for appellee.
MONTIEL, Judge.
Jeffery Day Rieber was indicted for murder made capital because it was committed during the course of a robbery in the first or second degree, in violation of § 13A-5-40(a)(2), Code of Alabama 1975. The jury found the appellant guilty of the capital offense as charged in the indictment. Following the sentencing hearing, the jury, by a vote of 7 to 5, recommended that the appellant be sentenced to life imprisonment without the possibility of parole. The trial court declined to accept the jury's recommendation and sentenced the appellant to death.
At approximately 5:00 p.m. on October 9, 1990, Allen Wayne Gentle stopped at the Mobil Mart convenience store in Huntsville, Alabama. While inside the store, Gentle saw and spoke to the appellant. Gentle and the appellant had attended the same high school several years earlier. When Gentle went to the counter, Glenda Craig, the cashier, asked him several questions. Gentle responded, "Rieber" and "I don't think he would do nothing like that." (R. 488-89.)
About three hours later, Glenda Craig was found lying on the floor of the Mobil Mart behind the cash register. She had been shot twice. Although Craig was alive when she was found, she died of the gunshot wounds shortly thereafter.
Later that night, the videotape from a surveillance camera at the Mobil Mart was taken into custody by the police. The tape showed a man entering the Mobil Mart at 7:55 p.m. and approaching the counter where Craig was standing. The man shot Craig and she fell to the floor. The man then took money from the cash register and reached over the counter and shot Craig again. The police showed Gentle the tape that night. The tape confirmed that the appellant and Gentle had been in the store around 5:00 that evening and Gentle identified the appellant as the man who entered the store at 7:55 and shot Craig.
Tommy Erskine testified that several days before this offense occurred, he went to the Mobil Mart. Erskine noticed the appellant sitting in a car outside the store. He said that when he went inside, Glenda Craig spoke to him and that she appeared very nervous and afraid. Erskine suggested she call the police and he left when the appellant entered the store. Erskine testified that after he got home, he decided to return to the store because he felt uneasy about what had happened. When he got to the store and did not see the appellant's car, he started to leave. He said that as he was driving away, he saw the appellant's car drive by the store. Erskine testified that he went in the store and told Craig to call the police because the appellant was patrolling the store.

I
The appellant contends that his arrest and the subsequent search of his residence and automobile were illegal. The offense occurred around 8:00 p.m. on October 9, 1990. The officers returned to the scene at approximately 10:50 p.m. after viewing the videotape. At that point, the appellant had been identified as the man on the tape by Wayne Gentle. Around midnight, Officer Guthrie, who knew the appellant, was summoned to the Mobil Mart and asked to identify the individual on the videotape. Guthrie then went to the police station, where he obtained *988 a file on the appellant, which contained a photograph and a home address. At approximately 3:00 a.m. on October 10, 1990, Officers Parker, Sharp, Renfroe, and Nunley of the Huntsville Police Department, along with Officers Collie and Guthrie of the Madison County Sheriff's Department, went to the address listed in the appellant's file. A SWAT team accompanied the officers. The SWAT team surrounded the residence, a mobile home, while the officers stayed at a location approximately 3/10ths of a mile away. Officer Guthrie telephoned the residence and spoke to the appellant. Guthrie told the appellant that the police wanted to talk to him concerning the events at the Mobil Mart. Guthrie told the appellant that his residence was completely surrounded by police officers and that he was to come out and follow the officers' instructions. At this time, the appellant came out of the residence and then went back inside. Guthrie then telephoned the residence again. The appellant answered and his mother, Janice Ellis, took the telephone away from him and asked Guthrie what was going on. Guthrie told her that the police wanted to question the appellant and that he needed to go outside and follow the police officers' instructions and that some officers would come to her residence a short time later and explain the situation to her. The appellant then came out of the house. At approximately 3:27 a.m., the appellant was taken into custody and was transported to the police station. Officer Renfroe spoke to the appellant's mother shortly after the appellant was taken into custody. He advised her that the appellant was a suspect in a robbery-murder that had occurred on the previous night. Renfroe asked Ellis if the mobile home belonged to her and she replied that it did. Renfroe told her that the officers would like to search the mobile home. Ellis gave them permission to search the mobile home and she signed a permission to search without a search warrant form. Shauna Rieber, the appellant's sister, also signed the form. Shauna Rieber told the officers that on that particular night, she was sleeping in the appellant's bedroom and he was sleeping in hers.
In the first bedroom, the police found a T-shirt, a pair of jeans, and some tennis shoes on the floor. These items were in plain view from the hallway and were similar to the clothes worn by the gunman in the videotape. Under a blanket in a bassinet in the room, the police found a baseball cap. The police also received permission from Ellis to search her vehicle, a 1980 Lincoln Town Car. Nothing of evidentiary value was found in Ellis's vehicle.
At the police station, the appellant made a statement after he was advised of his Miranda rights. The appellant told the officers that on the previous night, he was wearing jeans and a T-shirt with the words "anything goes" written on it. He told the officers that these clothes were on the floor in his bedroom. He then told the officers that there was a gun in the glove compartment of his car and some money under a mattress in his sister's bedroom and that a friend had given him both the gun and the money the night before and he was keeping them for his friend. The appellant denied involvement in the offense. The officers telephoned the officers who were conducting the search at the appellant's residence and instructed them about the clothes and the money and told them to impound the appellant's vehicle. The officers looked under the mattress in the back bedroom and found $292 in cash. $506 had been taken from the Mobil Mart. The vehicle was impounded. Later that day, a search warrant was obtained for the vehicle and a search of the vehicle revealed a .22 caliber revolver gun and 18 rounds of ammunition in the glove compartment. There were two spent rounds in the weapon.
In Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the United States Supreme Court held that the Fourth Amendment prohibits the police from entering an individual's residence without his consent to make a routine warrantless felony arrest. However, "such an entry may be proper where probable cause to arrest the suspect exists and there are exigent circumstances making it impossible or imprudent for a warrant to be obtained." Bush v. State, 523 So.2d 538 (Ala.Crim.App.1988).
The State initially argues that Payton does not apply because, it argues, the appellant *989 was not arrested inside his residence. This argument is without merit. When, as in this case, the individual leaves his residence as a result of a show of force by the police, it cannot be said that the individual left his residence voluntarily. Hamm v. State, 564 So.2d 453, 458, n. 2 (Ala.Crim.App.1989), aff'd 564 So.2d 469, cert. denied, 498 U.S. 1008, 111 S.Ct. 572, 112 L.Ed.2d 579 (1990). It is clear that the appellant's arrest occurred only after the SWAT team surrounded the appellant's residence. The officers admitted that the appellant was not free to leave and that they intended to arrest him when he came out of the mobile home. The appellant came out only after he was summoned by a telephone call from the police officers in the middle of the night, telling him that the house was surrounded and that it would be best if he would come out and follow police instructions once he was outside. The police officers, by their actions, constructively entered the appellant's residence to make the arrest. Hamm. The circumstances of this case clearly indicate that the appellant left his residence only under coercion from the police. See United States v. Al-Azzawy, 784 F.2d 890 (9th Cir.1985), cert. denied, 476 U.S. 1144, 106 S.Ct. 2255, 90 L.Ed.2d 700 (1986); United States v. Maez, 872 F.2d 1444 (10th Cir.1989); United States v. Morgan, 743 F.2d 1158 (6th Cir.1984), cert. denied, 471 U.S. 1061, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985); United States v. Johnson, 626 F.2d 753 (9th Cir.1980), cert. denied, 454 U.S. 814, 102 S.Ct. 89, 70 L.Ed.2d 82 (1981), aff'd, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982).
Therefore, because the appellant was effectively subjected to a warrantless and nonconsensual arrest in his residence, we must now consider whether there was probable cause to make the arrest and whether there were exigent circumstances to justify the arrest. Clearly, the police had probable cause to make the arrest. The appellant was identified by a high school classmate as the man on the videotape taken from the Mobil Mart shortly after the offense occurred. This witness had seen the appellant in the Mobil Mart earlier that evening, and their meeting was also recorded on videotape.
We must next determine whether there were exigent circumstances to justify the arrest in this case.
"Factors which indicate the existence of exigent circumstances include: (1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) a reasonable belief that the suspect is armed; (3) probable cause to believe that the suspect committed the crime; (4) strong reason to believe that the suspect is in the premises being entered; (5) a likelihood that delay could cause the escape of the suspect or the destruction of essential evidence, or jeopardize the safety of officers or the public; and (6) the peaceful circumstances of the entry."
Bush, 523 So.2d at 546.
In this case, "the gravity of the underlying offense was of the highest nature. The defendant had committed an offense for which the death penalty was authorized." Musgrove v. State, 519 So.2d 565 (Ala.Crim.App.), aff'd 519 So.2d 586 (Ala.1986), cert. denied, 486 U.S. 1036, 108 S.Ct. 2024, 100 L.Ed.2d 611 (1988). The police certainly had reason to believe that the appellant would be armed, in light of the fact that he was being arrested for an offense in which a gun had been used and that had occurred only seven hours earlier. The identification of the appellant on the videotape gave the police probable cause to believe that the appellant had committed the robbery-murder at the Mobil Mart. The police had strong reason to believe that the appellant was inside the residence because that was the address given as his home residence, and because Officer Guthrie had been to the residence and knew that the appellant lived there and saw his car parked there at the time of the arrest. As was the case in Musgrove,
"the facts indicating the possibility of the destruction of evidence are not especially significant here. In every criminal case, there exists the possibility that the evidence will be destroyed. Here there exists no facts to justify a conclusion that this possibility was especially great or magnified."
"Additionally, it should be noted that the arrest was made peaceably, without the *990 use of any force, and with the defendant's cooperation."
519 So.2d at 573. Thus, there were sufficient exigent circumstances present in this case which justified the warrantless and nonconsensual arrest of the appellant. The appellant's arrest was not illegal and did not violate Payton.
The appellant further contends that the warrantless search of his residence was illegal.
"This warrantless search falls within one of the well established exceptions to the requirements of both a warrant and probable cause, for it is a search that was conducted pursuant to consent. See Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). In order for the consent to be valid, the person giving the consent must have the authority to do so. Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). Permission may be obtained from `a third party who possesse[s] common authority over or other sufficient relationship to the premises or effects sought to be inspected.' United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974) (footnote omitted [in Daniels]). `The authority which justifies the third-party consent rests on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.' Id. at 171, n. 7, 94 S.Ct. at 993, n. 7. It is clearly the law in Alabama that a wife, or other joint occupants of living quarters, may constitutionally consent to a warrantless search of the premises."
Daniels v. State, 534 So.2d 628, 653 (Ala. Crim.App.1985), aff'd 534 So.2d 656 (Ala. 1986), cert. denied, 479 U.S. 1040, 107 S.Ct. 898, 93 L.Ed.2d 850 (1987). See also Smiley v. State, 606 So.2d 213 (Ala.Crim.App.1992) (Defendant's sister, who was lessee and sometimes occupant of apartment, had authority to consent to search of apartment).
The State presented evidence that the appellant's mother and sister both consented to the search of the mobile home. Certainly, the appellant's mother had authority to consent to the search because she owned the mobile home. The appellant's sister had a right to consent to the search of the two bedrooms because it appears that she and the appellant both used the two bedrooms. The appellant, in his statement to the police, described the clothes he was wearing on the night of the offense and told the police that they could find them on the floor of the bedroom. The clothes were also in plain view of the officers from the hallway. The appellant also told the officers that they would find money under the mattress. This information was relayed to the officers conducting the search. The record shows that the appellant's mother, who owned the residence, and the appellant's sister gave their consent to a search of the residence. The record shows that the appellant's sister and his mother had common authority over and a sufficient relationship to the mobile home itself and to the bedrooms therein where the evidence was found which would justify their consent to search. Compare Scott v. State, 337 So.2d 1342 (Ala.Crim.App.1976) (State did not present sufficient evidence to show that father and sister of the appellant had authority to consent to search because there was no showing as to who owned the property and who had control of the property).

II
The appellant contends that the judgment should be reversed because his attorney struck an Asian-American from the jury venire for racial reasons in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). This argument is without merit. The State used four of its peremptory strikes to remove black veniremembers from the jury; while the defense used two of its peremptory strikes to remove black veniremembers from the jury. Following the striking of the jury, the trial court conducted a Batson hearing and required the State and the defense to justify their strikes of black veniremembers. After both the State and the defense had given their reasons, *991 the trial court found that the State and the defense had each failed to give a racially neutral reason for striking one juror and it placed those two jurors back on the venire.
Following trial, the appellant filed a motion for a new trial which he subsequently amended to include this Batson claim. At the hearing, defense counsel stated that there had been an Asian-American on the venire and that he had used one of his peremptory strikes to remove this particular veniremember. He stated that he struck this veniremember for racial reasons.
We note that the appellant did not object on this ground until he filed his amended motion for a new trial. This failure to make a timely Batson objection would have waived this issue on appeal in a noncapital case. Ross v. State, 581 So.2d 495 (Ala.1991). However, because this is a capital case, any error must be examined in the context of plain error as set out in Rule 45A, A.R.App.P.
"`Under the "plain error" doctrine, as enunciated in Rule 45A, the Court of Criminal Appeals is required to search the record in a death penalty case and notice any error (ruling or omission) of the trial court and to take appropriate action, "whenever such error has or probably has adversely affected the substantial right of the [defendant]," in the same manner as if defendant's counsel had preserved and raised such error for appellate review.' Ex parte Johnson, 507 So.2d 1351, 1356 (Ala.1986). For plain error to exist in the Batson context, the record must raise an inference that the state [or the defendant] engaged in `purposeful discrimination' in the exercise of its peremptory challenges. See Ex parte Watkins, 509 So.2d 1074 (Ala.), cert. denied, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987)."
Guthrie v. State, 616 So.2d 913, 913 (Ala. Crim.App.1992) (second bracketed language added).
This court has recognized that the logic of Batson applies to the striking of Asian-American jurors. Wilsher v. State, 611 So.2d 1175 (Ala.Crim.App.1992). Defense counsel in this case admitted that he struck the Asian-American juror for racial reasons. The juror in question was clearly a member of a racially cognizable group and was struck for racial reasons. While the striking of this juror may have been improper and may have violated this juror's right to serve, we cannot hold that it was "plain error" because we fail to see how the striking of this juror affected the substantial right of this appellant. The appellant has not shown us nor can we see how the appellant was prejudiced by his defense counsel's striking this particular veniremember. Defense counsel struck this juror because he believed this juror would be more in favor of the prosecution and it was in his client's best interest to strike this juror. Further, not only is there no "plain error" in this situation, but also any error that may have occurred by defense counsel's actions in striking the Asian-American juror was invited error.
"The reversal of a conviction because defense counsel struck white veniremembers in a racially discriminatory manner would allow the appellant to benefit from his own voluntary conduct.
"`A defendant cannot by his own voluntary conduct invite error and then seek to profit thereby. Boutwell v. State, 279 Ala. 176, 183 So.2d 774 (1966); Aldridge v. State, 278 Ala. 470, 179 So.2d 51 (1965); Buford v. State, 214 Ala. 457, 108 So. 74 (1926); Barber v. State, 151 Ala. 56, 43 So. 808 (1907). "It would be a sad commentary upon the vitality of the judicial process if an accused could render it improper by his own choice." Aldridge, 278 Ala. at 474, 179 So.2d at 54; Jackson v. State, 38 Ala.App. 114, 116, 78 So.2d 665, cert. denied, 262 Ala. 702, 78 So.2d 667 (1955). This is not a situation where a defendant merely remained silent and permitted error to occur. Turner v. State, 54 Ala.App. 467, 309 So.2d 503 (1975).'"
Rowe v. State, 625 So.2d 1210, 1213 (Ala. Crim.App.1993). See also Dixon v. State, 481 So.2d 434 (Ala.Crim.App.1985); Murrell v. State, 377 So.2d 1102 (Ala.Crim.App.1979), writ. denied, 377 So.2d 1108 (1977).
Batson and its progeny "permit any party in any case to challenge the opposing party's use of peremptory challenges in a *992 racially discriminatory manner." Williams v. State, 634 So.2d 1034 (Ala.Crim.App.1993) (Bowen, P.J., dissenting). Thus, as a general rule, a party may object only to the opposing party's use of its peremptory strikes and not to its own. However, in this case, defense counsel could have alerted the trial court that he struck a juror for racial purposes before the swearing of the jury and the trial court could have fashioned some type of remedy for defense counsel's action, such as placing the removed juror back on the jury panel. However, by waiting until after the trial to object, defense counsel has taken inconsistent positions. Defense counsel obviously felt that it was advantageous to strike this juror. Defense counsel is now arguing that the trial court should protect the juror's right to serve and that the appellant was somehow harmed by being denied this particular juror's service. Defense counsel argues that because he struck this juror for racial reasons, his client should be granted a new trial. We fail to see how this would remedy the injustice suffered by the juror who was excluded from jury service.

III
The appellant contends that the jury override provision of § 13A-5-47(e), Code of Alabama 1975, is unconstitutional. Other appellants have raised this contention before this court and this issue has been decided adversely to those appellants. See Coral v. State, 628 So.2d 988 (Ala.Crim.App.1992), aff'd 628 So.2d 1004 (1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1387, 128 L.Ed.2d 61 (1994) (and cases cited therein); Parker v. State, 587 So.2d 1072 (Ala.Crim.App.1991). McGahee v. State, 632 So.2d 976 (Ala.Crim. App.), aff'd 632 So.2d 981 (1993).

IV
The appellant argues that the trial court erroneously found this offense to be especially heinous, atrocious, and cruel. The trial court in its sentencing order made the following findings:
"(a) The victim of this crime was completely defenseless and posed no threat to the defendant.
"(b) The defendant had stalked the victim for several days before the murder. She was aware of his presence and was apprehensive and afraid of him.
"(c) Defendant planned this crime in advance. He had purchased the weapon used to murder the victim several days ahead of time and had been to the store on several occasions before the murder, including the afternoon of the same day.
"(d) Defendant intended to kill the victim. He made no effort to conceal his face from the victim. Once he approached the victim he immediately shot her and robbed the cash register, not giving her an opportunity to deliver the money to him without being killed or wounded.
"(e) The victim suffered pain when she was initially shot by the defendant. This gunshot pierced her left wrist and lodged an inch below her skull. The evidence supports a finding that this first shot would have caused extreme pain and that perhaps the second shot could have done the same since the victim lived for some time before she died.
"(f) The most brutal aspect of defendant's conduct occurred when, after the defendant had rendered the victim completely helpless on the floor behind the counter, and after he had already stolen the money, he leaned over and delivered another shot which expert testimony established killed the victim. The Court finds the evidence as shown by the tape and as testified to by the forensic examiner fully supports a finding that the defendant shot the victim twice, once before she fell and once after, at a very close range. The Court finds that this was a conscienceless and pitiless killing performed for no reason whatsoever. Even though after the first shot, the victim posed absolutely no threat to the defendant, the defendant did not find it in his heart to spare the victim and did not recognize her humanity or her right to live. By any standard acceptable to civilized society, this crime was extremely wicked and shockingly evil. It was perpetrated under circumstances which caused fear and pain to the victim, and the evidence indicated that there was utter indifference *993 on the part of the defendant to this fear and pain. The Court recognizes that all capital offenses are heinous, atrocious and cruel to some extent, but the degree of heinousness, atrociousness and cruelty which characterizes this offense exceeds that common to all capital offenses."
The evidence in this case clearly supports the trial court's finding that this capital offense was especially heinous, atrocious, and cruel. The appellant shot the victim in the wrist and then shot the victim in the head after she had fallen to the ground. "When a defendant deliberately shoots a victim in the head in a calculated fashion, after the victim has already been rendered helpless by [prior] gunshots ..., such `extremely wicked or shockingly evil' action may be characterized as especially heinous, atrocious, or cruel." Lawhorn v. State, 581 So.2d 1159 (Ala.Crim. App.1990), aff'd 581 So.2d 1179 (Ala.1991), cert. denied, 502 U.S. 970, 112 S.Ct. 445, 116 L.Ed.2d 463 (1991). See also McWilliams v. State, 640 So.2d 982 (Ala.Crim.App.1991), aff'd in part, remanded in part on other grounds. Bush v. State, 431 So.2d 555 (Ala. Crim.App.1982), aff'd 431 So.2d 563 (Ala. 1983), cert. denied, 464 U.S. 865, 104 S.Ct. 200, 78 L.Ed.2d 175 (1983). Further, "[e]vidence as to the fear experienced by the victim before death is a significant factor in determining the existence of the aggravating circumstance that the murder was heinous, atrocious, and cruel. Ex parte Whisenhant, 555 So.2d 235, 243-44 (Ala.1989), cert. denied, 496 U.S. 943, 110 S.Ct. 3230, 110 L.Ed.2d 676 (1990)." White v. State, 587 So.2d 1218 (Ala.Crim.App.1990), aff'd 587 So.2d 1236 (Ala.1991), cert. denied, 502 U.S. 1076, 112 S.Ct. 979, 117 L.Ed.2d 142 (1992). There was evidence that the appellant had been in the store several times and that the victim feared him and that she was concerned about his presence at the store. We find that the trial court's finding that this offense was especially heinous, atrocious, and cruel was proper. See Ex parte Kyzer, 399 So.2d 330 (Ala.1981).

V
The appellant argues that the trial court erred in its consideration of mitigating circumstances. The trial court's sentencing order shows that the court specifically addressed each statutory mitigating circumstance and found that the only statutory mitigating circumstance that existed in this case was that the appellant did not have a significant history of prior criminal activity. The court carefully considered the psychiatric report and evidence of appellant's substance abuse in its consideration of mitigating circumstances and the sentencing order reflects that the court took into consideration evidence of the appellant's good reputation and good character before this offense. We find that the record does not support the appellant's contention that the trial court's consideration of the mitigating circumstances was improper.
Issues VI through XVI pertain to alleged errors in the trial court's instructions to the jury during the sentencing phase of the trial. Any error that may have occurred is harmless because the jury recommended life imprisonment without parole. Giles v. State, 632 So.2d 568 (Ala.Crim.App.1992), aff'd 632 So.2d 577 (Ala.1993). However, we will address the appellant's individual contentions.

VI
The appellant argues that the trial court's instruction to the jury violated Caldwell v. Mississippi, 472 U.S. 320, 328-29, 105 S.Ct. 2633, 2639, 86 L.Ed.2d 231 (1985).
"`"`Under Caldwell v. Mississippi, 472 U.S. 320 [328-29], 105 S.Ct. 2633, 2639, 86 L.Ed.2d 231 (1985), "it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." However,.... the instructions of the trial court accurately informing a jury of the extent of its sentencing authority and that its sentencing verdict was "advisory" and a "recommendation" and that the trial court would make the final decision as to sentence does not violate Caldwell. "Comments which accurately explain the respected functions of the Judge and jury are permissible under Caldwell `as long as *994 the significance of [the jury's] recommendation is adequately stressed.'" Harich v. Wainwright, 813 F.2d 1082, 1101 (11th Cir. 1987).'"'"
Jackson v. State, 640 So.2d 1025 (Ala.Crim. App.1992). In this case, the trial court merely mentioned that the jury's verdict was advisory and was not binding on the court. The trial court's comments correctly stated the law, they did not minimize the jury's role in the sentencing decision process; and they did not violate Caldwell. Johnson v. State, 620 So.2d 679 (Ala.Crim.App.1992), reversed on other grounds, 620 So.2d 709 (1993). Furthermore, the appellant's failure to object to the trial court's instruction weighs against any claim of prejudice. Johnson.

VII
The appellant contends that the trial court erred by failing to instruct the jurors that their findings concerning aggravating circumstances had to be unanimous. We note that defense counsel did not object to the trial court's instruction on this or any other ground. This same issue was addressed by this court in Stewart v. State, 601 So.2d 491 (Ala.Crim.App.1992). In Stewart, the defendant, like the appellant, failed to object to the trial court's instruction on this or any other ground. We found that "any possible error which may have occurred from the trial court's failure to use the term `unanimous,' did not amount to plain error. The court's use of the term `the jury' implies that any findings of aggravating circumstances had to be unanimous. We must evaluate instructions like a reasonable juror may have interpreted them. See Francis v. Franklin, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985)." 601 So.2d at 508. Likewise, we have reviewed the instructions in this case and we find that the trial court's instructions adequately informed the jury that its findings concerning aggravating circumstances had to be unanimous. The appellant failed to object on this ground at trial and we do not find that plain error occurred in the trial court's instruction to the jury.

VIII
The appellant contends that the trial court improperly instructed the jury as to the "especially heinous, atrocious, and cruel" aggravating circumstance. The State also claims that the instruction on this matter was erroneous because the trial court failed to instruct the jury that in order for this aggravating circumstance to apply, the murder must be unnecessarily torturous to the victim. Ex parte Kyzer, 399 So.2d 330 (1981). The State is incorrect in its assertion. In its instruction, the trial court stated:
"For a capital case to be heinous or atrocious, any cruelty which was involved must have exceeded that which is normally present in capital cases. For a capital case to be especially cruel, it must be a conscienceless or pitiless crime which was unnecessarily atrocious and torturous to the victim."
(R. 1011.) We have carefully reviewed the court's instruction concerning the "especially heinous, atrocious, and cruel" aggravating circumstance and we find no error in the instruction. Hallford v. State, 548 So.2d 526 (Ala.Crim.App.1988), aff'd, 548 So.2d 547 (Ala.1989), cert. denied, 493 U.S. 945, 110 S.Ct. 354, 107 L.Ed.2d 342 (1989). Bui v. State, 551 So.2d 1094 (Ala.Crim.App.1988).

IX
The trial court gave the following instruction:
"It is enough for you to consider it if you as the Jury are reasonably satisfied that the Defendant's capacity to appreciate the criminality of his conduct was lessened substantially or diminished substantially."
(R. 1014.) The appellant did not object to this instruction. The appellant merely asserts that this instruction "ran afoul of our constitution," and he cites Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).
"In Lockett v. Ohio, 438 U.S. 586 [98 S.Ct. 2954, 57 L.Ed.2d 973] (1978), the United States Supreme Court held that, under the United States Constitution, a state's death penalty procedure must not preclude the consideration of relevant mitigating factors. Lockett provides that a state may not exclude evidence that the defendant claims to be mitigating." *995 Ex parte Carroll, 627 So.2d 874 (Ala.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1207, 127 L.Ed.2d 554 (1994). The above-quoted instruction did not in any way prevent the jury from considering any statutory or nonstatutory mitigating circumstances. Therefore, there is no merit to this issue. Furthermore, the appellant's failure to object to the trial court's instruction weighs against any claim of prejudice. Johnson.

X
The appellant contends that the trial court precluded the jury from considering residual doubt during the sentencing phase of the trial. "[C]apital defendants have no right to demand jury consideration of `residual doubts' in the sentencing phase. Franklin v. Lynaugh, 487 U.S. 164, 172-76, 108 S.Ct. 2320, 2326-28, 101 L.Ed.2d 155 (1988)." Carroll v. State, 599 So.2d 1253, 1271 (1992).

XI
The trial court gave the following instruction:
"Now voluntary intoxication is not necessarily a defense in this particular case. If you get yourself voluntarily intoxicated, it isn't necessarily a defense, but it is admissible, and it may be considered by you as a Jury; and you may determine whether it is relevant to negate an element of aggravation or whether it supports an element of mitigation in this particular case."
The appellant contends that the trial court's reference to voluntarily intoxication as a "defense" confused the jury and precluded it from considering as a mitigating circumstance, his intoxication at the time of the offense in violation of Lockett. We have carefully reviewed the court's complete charge on voluntary intoxication and the entire jury charge and we do not find that any of the trial court's instructions prevented the jury from considering any mitigating evidence. The appellant also contends that the trial court erred by failing to inform the jury of all of the mitigating circumstances listed in § 13A-5-51, Code of Alabama 1975. The appellant made no objection at the trial on this ground. The trial judge told the jury that they could consider the mitigating circumstances listed in § 13A-5-51 (1), (6), and (7). There was absolutely no evidence presented by which the jury should have considered the mitigating factors listed in § 13A-5-51 (2), (3), (4), and (5). Thus, the trial court committed no error by not informing the jury of every nonstatutory mitigating circumstance. Furthermore, the appellant's failure to object on these grounds weighs against any claim of prejudice. Johnson.

XII
The appellant contends that the trial court erred by charging the jury that it must be reasonably satisfied of the existence of a mitigating circumstance before considering it. The appellant argues that the jury should have been told to weigh all mitigating circumstances. This assertion is totally without merit. The trial court told the jury that it could consider any evidence in mitigation but that mitigating circumstances had to be based on evidence. This was a correct statement of the law and no error occurred here. Furthermore, the appellant's failure to object to the trial court's instruction weighs against any claim of prejudice. Johnson.

XIII
The appellant alleges that the trial court erroneously refused to instruct the jury that it could consider mercy in its sentence recommendation. The appellant's requested instruction on this subject was as follows:
"Even if you find one or more aggravating circumstances beyond a reasonable doubt, you may impose a sentence of life in prison without parole for any reason or for no reason at all. You need not find a mitigating circumstance in order to impose a sentence of life imprisonment. Nothing in the law forbids you from extending mercy out of compassion or belief that life imprisonment is sufficient under all the circumstances."
(R. 148.) Clearly, this charge was an incorrect statement of the law. In Whisenhant v. State, 482 So.2d 1225 (Ala.Crim.App.1982), aff'd in part, 482 So.2d 1241 (1983), the court refused to give a similar charge. In Whisenhant, the defendant asked the court to tell the jury that it could recommend mercy for *996 the defendant regardless of whether any evidence of mitigating circumstances was preserved. In finding that the defendant's requested instruction was an erroneous statement of law, this court held:
"The correct principle underlying this issue is stated in [Beck v. State, 396 So.2d 645, 663 (Ala.1992] as follows:
"`The court shall instruct the jury that in determining whether to fix a punishment of death, the jury must weigh the aggravating and mitigating circumstances in determining whether to fix the punishment at death. The trial court shall instruct the jury to avoid any influence of passion, prejudice or other arbitrary factor while deliberating and fixing the sentence.'"
"Clearly, it is the duty of the jury to weigh mitigating and aggravating circumstances in its decision. The jury is not free, as appellant's charge suggests, to arbitrarily ignore any factor, positive or negative, in arriving at the correct sentence.
"As well, we view Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976) to have tacitly held that the availability of such a mercy option to the sentencing authority is not a constitutional requirement. As Mr. Justice White's concurring opinion in Proffitt points out, the sentencing authority in Florida is required to impose the death penalty on all first degree murderers as to whom the statutory aggravating circumstances outweigh the mitigating circumstances. Proffitt at 260 [96 S.Ct. at 2970]. This required imposition of the death penalty, regardless of mercy, passed constitutional muster in Proffitt, and is in keeping with the concern that arbitrary and capricious imposition of the death penalty be avoided. Hopper v. Evans, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982)."
Whisenhant, 482 So.2d at 1236. See also Morrison v. State, 500 So.2d 36 (Ala.Crim. App.1985), aff'd 500 So.2d 57 (1986), cert. denied, 481 U.S. 1007, 107 S.Ct. 1634, 95 L.Ed.2d 207 (1987).

XIV
The appellant contends that the trial court's instructions to the jury implied that the jury had to unanimously agree in order to find a mitigating circumstance. The appellant did not object to the trial court's instruction on mitigating circumstances at trial. We have carefully reviewed the trial court's instructions and we do not find anything that would have suggested to the jurors that their findings with regard to mitigating circumstances had to be unanimous.
"The jurors in the instant case could not have reasonably believed that they were required to agree unanimously on the existence of any particular mitigating factor. The appellant did not object to the trial court's instructions on mitigating circumstances, and, thus, we review this issue under the plain error rule. We find no error here, much less plain error. Moreover, we note that, even had the charge been ambiguous, the appellant would not have been harmed, because the jury recommended a sentence of life imprisonment without parole."
Coral v. State, 628 So.2d 954, 985 (Ala.Crim. App.1992). See also Kuenzel v. State, 577 So.2d 474, (Ala.Crim.App.1990), aff'd, 577 So.2d 531 (Ala.1991), cert. denied, 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991); Dill v. State, 600 So.2d 343 (Ala.Crim.App. 1991), aff'd 600 So.2d 372 (Ala.1992), cert. denied, 507 U.S. 924, 113 S.Ct. 1293, 122 L.Ed.2d 684 (1993). Holladay v. State, 629 So.2d 673 (Ala.Crim.App.1992), cert. denied, ___ U.S. ___, 114 S.Ct. 1208, 127 L.Ed.2d 555 (1994). Furthermore, the appellant's failure to object to the trial court's instruction weighs against any claim of prejudice. Johnson.

XV
The appellant argues that the trial court improperly denied the appellant's request that it inform the jury that "life without parole meant a convict could never be released from imprisonment." We fail to see how the appellant was harmed, because the trial court defined "life imprisonment without parole" when the jury requested the definition.

XVI
The appellant contends that the trial court should have instructed the jury that it *997 must be "convinced beyond a reasonable doubt of the appropriateness of a death recommendation." (Appellant's brief, p. 23.) This issue was addressed in Whisenhant v. State, 482 So.2d 1225 (Ala.Crim.App.1982), aff'd in part, 482 So.2d 1241 (1983). In Whisenhant, this court stated:
"Under the Alabama Death Penalty Statute as modified by Beck v. State, 396 So.2d 645 (Ala.1980), the sentence determining phase is entirely separate from the trial on the guilt finding phase of the capital offense. That the mitigating must outweigh the aggravating factors is not an element of the capital offense in Alabama. The sentencing procedure outlined in Beck only applies in the event the defendant is first found guilty of the substantive capital offense.
"`The central issue in the guilt phase of the trial will be whether the State has satisfied its burden of proving beyond a reasonable doubt that the defendant is guilty of a capital crime. In the event the defendant is found guilty of the capital offense, the sentencing procedures hereinafter outlined shall apply.'
"396 So.2d at 662.
"In Alabama, the State must prove the aggravating circumstances averred in the indictment beyond a reasonable doubt.
"However, the fact that due process protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime charged is not relevant under Beck as to weighing aggravating and mitigating circumstances at the sentence determining phase.
"The separate acts of proving facts at the guilt phase and weighing facts against each other at the penalty phase are not to be confused.
`While the existence of an aggravating or mitigating circumstance is a fact susceptible to proof under a reasonable doubt or preponderance standard, see State v. Dixon, 283 So.2d 1, 9 (Fla.1973), and State v. Johnson, 298 N.C. 47, 257 S.E.2d 597, 617-18 (1979), the relative weight is not. The process of weighing circumstances is a matter for judge and jury, and, unlike facts, is not susceptible to proof by either party. Petitioner's contrary suggestion is based on a misunderstanding of the weighing process, the statute and the guiding and channeling function identified in Proffitt v. Florida, 428 U.S. [242] at 258, 96 S.Ct. [2960] at 2969 [49 L.Ed.2d 913]. Indeed, it appears no case has applied In re Winship [397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)] in the manner Ford urges. The North Carolina and Utah cases cited by him which imposed a reasonable doubt standard in this situation turned on construction of state statutes rather than the due process rationale of In re Winship. See State v. Johnson, 257 S.E.2d at 617, and State v. Wood, 648 P.2d 71 (1981).'
"[Ford v. Strickland,] 676 F.2d [434] at 482 [11th Cir.1982].
"As well, at the sentencing phase the State is permitted to offer any other statutorily listed aggravating circumstance which was not averred in the indictment, but which was proved beyond a reasonable doubt at the guilt phase at the sentencing hearing. Beck at 663. Thus while the aggravating circumstances must be proven beyond a reasonable doubt, the jury may return the death penalty if it simply does not find the aggravating circumstances are outweighed by the mitigating circumstances. We find this to be in accord with sentencing procedures previously upheld as meeting constitutional standards. Gray v. Lucas, 677 F.2d 1086 (5th Cir.1982). See also People v. Frierson, 25 Cal.3d 142, 158 Cal.Rptr. 281, 599 P.2d 587 (1979).
"Finally, considering (1) that Alabama law requires the trial judge to file written findings of fact sustaining the death penalty and (2) that Beck ensures the function of appellate review is to guarantee similar results in similar circumstances under all cases, we find no error in allowing Alabama jurors to `weigh' the aggravating and mitigating factors, as opposed to determining them under a reasonable doubt standard."
*998 482 So.2d at 1235 (emphasis original).
"Therefore, while the aggravating circumstances must be proven beyond a reasonable doubt at the guilt phase, the jury may return the death penalty if it finds at the penalty phase simply that the aggravating circumstances outweigh the mitigating circumstances." Morrison v. State, 500 So.2d 36, 45 (Ala.Crim.App.1985), aff'd, 500 So.2d 57 (1986), cert. denied, 481 U.S. 1007, 107 S.Ct. 1634, 95 L.Ed.2d 207 (1987). The appellant's contention is without merit.

XVII
This court is required by § 13A-5-53, Code of Alabama 1975, to review the propriety of the appellant's sentence of death and to examine this record for plain error.
We have reviewed the trial court's findings concerning the aggravating and mitigating circumstances in this case. The trial court found two aggravating circumstances: 1) that the capital offense was committed while the appellant was engaged in the commission of a robbery in the first degree, and 2) that the capital offense was especially heinous, atrocious, or cruel when compared to other capital offenses. The trial court considered as a mitigating circumstances the fact that the appellant had no significant history of prior criminal activity and the fact of the appellant's good reputation and character before this offense. The trial court considered the psychiatric evaluation of the appellant, including evidence of substance abuse, but concluded that this evidence did not establish the mitigating circumstance that the capital offense was committed while the appellant was under the influence of extreme mental or emotional disturbance. The trial court also found that the evidence concerning the appellant's substance abuse was not sufficient to establish the mitigating circumstance that the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired. The trial court also found that the appellant's age, 23 years, was not a mitigating circumstance in this case. Our review of the record leads us to conclude that the trial court's findings are supported by the record. We find no evidence that the appellant's sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor. Our independent weighing of the aggravating and mitigating circumstances convinces us that death is the appropriate and proper sentence in this case.
Furthermore, the appellant's sentence of death is not disproportionate to the penalty imposed in similar cases, considering the crime and this appellant. See Beck v. State, 396 So.2d 645, 654, n. 5 (Ala.1980).
Pursuant to Rule 45A, A.R.App.P., we have thoroughly reviewed the record in this case, and we find no error that adversely affected this appellant's rights during either the guilt or sentencing phase of this trial. The appellant's conviction for this capital offense and his sentence of death are proper. The judgment of the trial court is affirmed.
AFFIRMED.
PATTERSON and McMILLAN, JJ., concur.
BOWEN, P.J., concurs in part and concurs in the result in part with opinion, in which TAYLOR, J., joins.
BOWEN, Presiding Judge, concurring in part and concurring in the result in part.
I concur only in the result reached by the majority in Part I of its opinion.
In this case there were no exigent circumstances. The arrest of the appellant did violate Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). However, the appellant's statement was admissible under New York v. Harris, 495 U.S. 14, 21, 110 S.Ct. 1640, 1644-45, 109 L.Ed.2d 13 (1990) ("where the police have probable cause to arrest a suspect, the exclusionary rule does not bar the State's use of a statement made by the defendant outside of his home, even though the statement is taken after an arrest made in the home in violation of Payton").